HYNDS *v.* HAYS.*

PRACTICE.—Where a demurrer has been sustained to a paragraph of an answer, the error will not be available in the Supreme Court, if there were other paragraphs of the answer under which the same evidence might have been introduced.

INSTRUCTIONS.—Where there is no evidence to sustain an issue, it is the duty of the court so to inform the jury.

RENEWAL OF NOTE—CONSIDERATION.—A note or bill given in renewal, merely, of another, the consideration of which is tainted, may be defended against in the same manner as if the suit was upon the first note or bill.

But it is otherwise where the second note or bill is supported by a new and distinct consideration.

PRINCIPAL AND AGENT.—The declarations of an agent, made while he is actually transacting for his principal the business to which the declarations relate, are admissible against the principal only because they are part of the *res gestæ*, and declarations made at other times are not admissible.

CONTRACT—ILLEGALITY OF PART.—Where a party has contracted to do certain things, and an illegal act is included therein, he may nevertheless be held to perform so much of his contract as it is lawful to perform, if it can be separated from that part which is illegal. But if no separation can be made between the legal and illegal stipulations, the whole will be held void.

SAME—ILLEGALITY OF CONSIDERATION.—So where the consideration of a contract is in part legal, and in part illegal, if the consideration is separable, a recovery may be had to the extent of the legal consideration.

SAME.—Suit upon several bills of exchange. Answer, that the consideration of the bills was, in part, the payment of unauthorized and illegal paper, in the similitude of bank notes. The other part of the consideration was the payment of legal bank paper.

*Held*, that the consideration was sufficient to support the action to the extent of the lawful money paid.

SAME.—The same rule applies whether the consideration is made illegal by statute, or by the common law.

APPEAL from the *Putnam* Circuit Court.

FRAZER, C. J.—This was a suit upon six bills of exchange, drawn upon and accepted by the appellant, which he procured to be discounted by the *Bank of Gosport.* They were passed by the bank to the plaintiff after maturity. The answer was in five paragraphs. The 1st, 2d and 5th, payment at maturity. 3. That one *Alexander* was president and agent of the bank, and authorized to receive payment for the bills, and adjust the same; that, at maturity, the defendant delivered to *Alexander* 500 hogs, which were by him accepted and received in full satisfaction of the bills. 4. That the defendant, on the discounting of the bills, received from the bank the notes of individuals and pretended banks, in the similitude of bank notes, which were illegal. A demurrer was sustained to the third paragraph, and by a reply of general denial, issues were made upon the others.

Was the demurrer to the third paragraph correctly sustained?

If the defense made by this paragraph was merely payment, as the appellant argues, on the authority of *Louden* v. *Birt*, 4 Ind. 566, and *Tilford* v. *Roberts*, 8 Ind. 254, then there could be no available error in the action of the court below in sustaining the demurrer, for there were three other paragraphs of the answer which would have admitted proof of the same facts. Two of those, really, should have been stricken out of the record by the court, upon its own motion. Needlessly incumbering the record is becoming a great mischief, under our system of practice, to which a check ought to be applied by the lower courts at every opportunity. We are well disposed to sustain them in the proper exercise of their authority in that direction. The modern cases go far to destroy the distinction between the defense of payment, and that of accord and satisfaction.

The evidence disclosed that one of the bills sued on was given in satisfaction of another bill, held by the bank against one *Stout*, to whom the appellant was indebted, and by which that indebtedness was satisfied. Evidence offered by the defendant to show that *Stout's* bill was given in consideration of illegal currency, paid out to him by the bank, was rejected, and leave refused to amend the answer so as to correspond with the proposed proof. The court also instructed the jury that there was no evidence before them that the consideration of that bill was unlawful currency. This instruction was proper to be given, if no such evidence had been admitted. Where there is no evidence, whatever, to maintain an issue, it is the duty of the court so to inform the jury. This is not usurping the province of the jury.

It is true that a note or bill given in renewal merely of another, the consideration of which is tainted, may be defended against in the same manner as if the suit were upon the first bill. The consideration of the first bill is held to form the consideration of each subsequent one. But this is not that case. Here the defendant paid his indebtedness

to *Stout*, and was discharged from it, by making the acceptance sued upon. This constituted a new and distinct consideration. We know of no authority which will authorize him now to question *Stout's* former liability to the bank, which *Stout* himself did not choose to controvert. The evidence was properly excluded, and the leave to amend correctly refused.

Evidence was excluded, showing admissions by *Alexander*, while president and chief manager of the business of the bank, that the bills in suit were paid. Such admissions having been made when called upon by the defendant, at the bank, to surrender the bills, shortly after the alleged payment, and after the maturity of all the bills except one. *Alexander* at the same time failing to surrender them. The declarations of an agent, made while actually transacting for his principal the business to which the declarations relate, are admissible only because they are part of the *res gestæ*, and are proper for a correct understanding of acts. They are said to be "verbal acts." But the oral admissions of even a party, are often loosely and inconsiderately made, and are then, in the very nature of things, very unreliable evidence, and it is not certain that justice would not often be better attained without them. We do not think it would be wise, at any rate, to extend the rule so as to make evidence of the admissions of the agent, when not engaged in the business which the admissions tend to explain. A man does not weigh his own casual conversations, and is very liable to be misunderstood. It is enough to hold him responsible for his own words, without also charging him with those of his agent, who is not employed to bind him by utterances, except in connection with business, and while it is being done. But the admissions of the agent of the bank sought to be introduced were made in the course of business which he was empowered to do, and were explanatory of his acts done at the time. He was the proper person to deliver the bills to the defendant if they had been paid; his failure to deliver them when demanded was an *act*, and

the bank was responsible for it. His declarations at the time were a part of that act. Failing to deliver the bills, it seems to us that he had authority to give the defendant evidence that they had been duly paid, if such was the fact. His written acquittances, if they had been paid and were lost, or for any other cause could not then be surrendered, would have bound the bank. Why, then, should not his oral declaration at the time, which is less conclusive, be admitted in evidence? The failure to surrender the bills when demanded was the act of the bank, and the explanation of that failure was a part of the act. We think, therefore, that the evidence ought to have been admitted for whatever it was worth.

There was evidence tending to prove that the money paid out by the bank for each of five of the bills was in large measure unauthorized and illegal paper, issued by others, in the similitude of bank notes. It was admitted to be illegal. The defendant moved the court to instruct the jury that under such circumstances there could be no recovery upon either of the five bills. This was refused; but the jury were told by the court that if the bank was not the author of such illegal currency, so paid for the bills, then there would be a failure of consideration only to the amount of such illegal currency, so paid out.

It is contended, on the one hand, that the consideration, being illegal in part, tainted the whole transaction, so that there can be no recovery whatever upon any of the bills thus contaminated. While, on the other side, this is conceded to be the rule where a statute makes it a fraud to circulate such issues, and that to the extent that the consideration consisted of paper issues admitted to be illegal there can be no recovery in this case; yet it is insisted that the law will distinguish between the illegal consideration and that which is lawful, and, to the extent of the latter, will enforce the contract, where the original payee is not the author of the illegal paper, and there is no statute making it penal to circulate it. No authority is cited to support the

distinction attempted to be drawn between cases where the thing is prohibited by statutory penalties, and where it is illegal but no penalties are imposed by statute, and we do not think that the distinction can be maintained. It seems to us that there is no good reason for it, so far as civil rights and liabilities are to be affected. It once had a support in some of the adjudged cases, but it is quite clear that the doctrine must now be regarded as opposed by the weight of modern authority. The cases are collected in 1 Pars. on Cont. 381, note *y*, and that learned and accurate writer regards the distinction under consideration as a venerable error, now fully exploded.

Nor are we now prepared to hold that the present case stands in any better light for the plaintiff than it would if the *Bank of Gosport* had been the author of the illegal paper; for it appeared by the evidence that the bank arranged with the authors to put these issues in circulation, and to give them credit with the public at its counter.

It seems, therefore, that we must now consider the soundness of the general proposition made by the appellant. It is broadly announced by most of the elementary writers, that if any part of an entire consideration for a promise be illegal, the whole contract is void; but the author already cited says that where the illegality of the consideration is but partial, questions still remain which can only be determined by further adjudication. Chancellor KENT, however, withholds his assent from so sweeping a proposition as is declared by Chitty and Comyn, and also by Parsons, with the qualification mentioned, and says: "When the good part of the consideration can be separated from that which is bad, the courts will make the distinction, for 'the common law doth divide according to common reason,' and having made that void that is against law, lets the rest stand." 2 Kent's Com. 467-8.

It is, we believe, well settled that where a party has contracted to perform anything, and an illegal act is included therein, that he shall nevertheless be held to perform so much

Hynds *v.* Hays.

of his contract as it is lawful to perform, if it can be separated from that part which is illegal. In other words, so far as the contract is lawful it will be supported, but beyond that the parties will be left without aid. But if the contract be of such a nature that no separation can be made between the legal and illegal stipulations, then the whole will be held void, and no action can be maintained upon it.

We are unable to perceive any sound reason for the application of a different doctrine to cases like the present one. Here a portion of the consideration was perfectly valid, and it is entirely practicable to separate it from that which was vicious; to enforce the contract of the defendant, so far as it is supported by a consideration which the law tolerates, and refuse the aid of the law beyond that. If for a consideration which was free from objection, the defendant had promised to pay a certain sum in lawful money, and an additional sum in illegal paper issues, the amount agreed to be paid in lawful money could be recovered. The only point of difference between the case supposed and the one in hand, is that the parties have changed places, and thereby the contract, so far as it is illegal, instead of being executed, is executory. In both cases the parties are, in legal contemplation, equally guilty, and neither is entitled to any more or less consideration than the other. This is the principle which should be our guide in such cases, and, if adhered to, then there will be no application of different rules of decision to cases which are in no respect distinguishable in their essential nature. Surely it is impossible to find any reason whatever for holding that upon a promise to pay a certain sum in lawful money, in consideration of a loan which was part lawful money and part unlawful paper, *nothing* shall be recovered; and yet that upon a promise to pay a sum, part in lawful money and part in unlawful paper, in consideration of a loan of lawful money, there *shall* be a recovery to the extent of the promise to pay lawful money. If illegality shall be held to vitiate the whole contract in the one case, it ought to be so held also in the other. The

consideration in the one case is as readily separable as the promise to pay is in the other. To say, in the language of some of the cases, that the illegality of a part of the consideration taints and renders the whole vicious, is merely announcing a theory which rests wholly on fancy. To assert that the lawful dollars paid out by the *Bank of Gosport*, with illegal paper, was not lawful money, is not true, either in law or fact. We are disposed, therefore, to hold that in a case like this the consideration ought to be deemed sufficient to support the action, to the extent that it was lawful money. This doctrine is in accordance with *Yundt* v. *Roberts*, 5 S. & R. 139; *Dawson* v. *Remmart*, 6 Esp. Cases, 24; *Pickard* v. *Cottels*, Yelv. 56; *Crookshank* v. *Rose*, 5 C. & P. 19; and *Jarvis* v. *Peck*, 1 Hoff. 479. We are aware that a contrary rule is supported by a great number of cases, and *dicta* still more numerous; but as it seems to us to want the sanction of sound reason, and as the question is now for the first time before this court, we feel at liberty to adopt the doctrine which can be maintained without resorting to fiction and absurdity. The most of the cases which hold the other way did not call for the announcement of any such principle, inasmuch as either the consideration was not capable of separation, or else the stipulation to be performed was of such a nature that it could not be so apportioned as to require the performance of a part of it, without making a new contract, and one which the law would not imply. They all rest upon and refer to *Featherston* v. *Hutchinson*, Cro. Eliz. 199. That case was of a like character, and needed no such doctrine to solve it. We cannot regard it, and those like it, as authority in a case like the present. That case was a suit upon a contract with an officer, in consideration of two shillings and the discharge of a prisoner from confinement, to pay the debt for which he was in custody. It is obvious that the money paid was such a trifle as to merit no favor in court, and that a recovery to the extent of it only was not sought by the plaintiff, and could not have been regarded by the court as worth while to consider. It was too small

an amount to have moved the defendant to contract at all. It was a mere cover to protect an illegal transaction; and it is fair to infer, from the report of the case, that the question considered by the court was not whether there might be a recovery of two shillings, but whether the payment of that sum constituted a sufficient consideration to support a judgment for the whole sum contracted to be paid.

Inasmuch as the plaintiff admitted in the court below that the paper issues were illegal, thereby waiving proof of their nature and character, we must give the appellant the full benefit of that admission. But, at the date of the transaction, we must take notice that we had no statute whereby they were rendered illegal. It must be assumed, then, that they were merely void, as being against public policy. In *Roby* v. *West*, 4 N. H. 285, where a portion of the consideration was illegal by statute, and could not be separated from that which was good, it was correctly held that there could be no recovery. *Woodruff* v. *Hinman*, 11 Vt. 592, was of the same nature, save that it was easy to separate the lawful from the unlawful part of the consideration, but it was also held that there could be no recovery. It was conceded, however, that in a case like the one before us, a recovery would be proper, to the extent that the contract was supported by a lawful consideration, and a distinction was said to exist between cases where a statute made the consideration unlawful, and those where it was void by the common law. But we are satisfied that such a distinction cannot be maintained consistently with sound reason. There is no solid foundation for it, and the authority usually relied upon for its support is misconceived, and the distinction itself was denied and overthrown in *England* long ago. *Norton* v. *Simmes*, Hob. 14, is the case relied upon as the origin of the distinction. But there is no such judgment or *dictum* in the case. That was a suit upon a bond with covenants, some of which were legal and others void at common law. The bond was held good for the covenants that were lawful. It was, however, observed at

the time the case was reported, that there was a difference between that case and another mentioned, where the statute, by its express letter, made the *whole* bond void—a difference, it may be observed, which is altogether another thing than that announced in the *Vermont* case. Chancellor KENT evidently did not so understand *Norton* v. *Simmes*, for he quotes the quaint language of Lord Chief Justice HOBART, contained in the report of the case, but takes no notice of any such distinction. But an indefinite tradition of what Lord HOBART observed, probably in that case, was afterward preserved in the opinion of TEVISDEN, J., in *Maelverer* v. *Redshaw*, 1 Mod. 35, thus: "I have heard my Lord HOBART say, that because the statute would make sure work, and not leave it to exposition what bonds should be taken, therefore, it was added that bonds taken in other form should be void. For, said he, the statute is like a tyrant, where he comes he makes all void; but the common law, like a nursing father, makes void only that part where the fault is, and preserves the rest." Upon so slight a foundation the distinction was built, and for more than a century after recognized and acted upon by the courts, overlooking the fact that Lord HOBART was speaking of a statute which had, in express terms, avoided the whole. But, in *Collins* v. *Blantern*, 2 Wilson 348, it was greatly shaken by Chief Justice WILMOT, who said that "Statute law was the will of the legislature in writing; the common law is nothing else but statutes worn out by time. All our law began by consent of the legislature, and whether it is now law by usage or by writing, it is the same thing." And, again: "I think there is no difference between things made void by act of parliament, and things void by the common law; *     *   I am not for giving any preference to either, but if to either, I should be for giving it to the common law. *     *   The judges formerly thought an act of parliament might be eluded if they did not make the whole void, if part was void." This was in 1767, and was followed by a long line of decisions wholly ignoring the distinction which

had previously obtained, and which is mentioned in the *Vermont* case, and, indeed, in a number of other American cases. *Mouys* v. *Leake*, 8 T. R. 411; *Kerrison* v. *Cole*, 8 East. 231; *Gaskell* v. *King*, 11 East. 165; *Wigg* v. *Shuttleworth*, 13 East. 87; *Howe* v. *Synge*, 15 East. 440.

Where a statute declares that the whole contract shall be void if it contain some stipulations which are illegal, there can be no doubt that the duty of the courts is to give full effect to the statute. But where a statute only declares a given contract illegal, or prohibits it without defining the consequences, the common law contents itself by refusing to enforce the illegal contract, and as to it leaves the parties in the condition in which they have placed themselves; but is at the same time careful, where it is possible, to separate that which is illegal from that which is valid, and to maintain the latter, and it is a grave mistake to construe the language of Lord HOBART as being in conflict with this proposition. The contract is held void so far as it is forbidden by the statute, for the same reason that contracts against public policy are held void. Being alike void, neither class of contracts will be enforced, and if so mingled with transactions sanctioned by law that no separation can be made, the whole will, in consequence, be void. Such was the doctrine of the common law, having its foundations in that sound reason of which it claims to be the very perfection.

That class of cases, of which there are not a few, which correctly deny the distinction last considered, and then hold that where a portion of the consideration is void at common law, every part of the contract is void, are founded in the mistake which supposes that that which is void by statute vitiates everything with which it is connected. Justly insisting that there is no difference, whether by statute or by the common law the consideration be void, and applying a uniform rule in both cases, they apply that which for a time was erroneously held applicable where a statute made the thing illegal, overlooking the fact, which we think we have

shown, that that rule was not well founded, and has been so often disregarded, or expressly denied, that it ought not further to receive the support of any judicial tribunal.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*W. R. Harrison, H. Secrest* and *S. Turman,* for appellant.

*J. E. McDonald* and *A. L. Roache,* for appellee.

\* See note on page 542.