GULF, COLORADO & SANTA FE RAILWAY COMPANY
v. HUME BROS.

No. 160.

**1. Stipulated Limitation in Suit for Damages.**
  It is lawful for a railway company to contract with a shipper fixing a reasonably shorter time than that allowed by statute within which suit may be filed in case of damages .......................................... 218

**2. Same—Service of Citation.**
  The duties of public officers in issuing and in serving citations are prescribed by law; and any contract between parties which would involve any interference with the regular discharge of those duties would be against public policy and void. A stipulation requiring that suit be brought and citation served within a time less than that prescribed in the general law of limitations would be void............................................ 218

**3. Same—Unlawful Stipulation.**
  A freight contract stipulated that suit for damages must be filed and service had within forty days after accrual of the claim. The stipulation as to service of citation being unlawful, the two acts of filing suit and service of citation are so blended that they can not be separated. The entire clause is nugatory ...................................................... 219

**4. Station Agent.**
  A station agent of a railway company can bind it by a verbal contract to furnish cars at a given time for the shipment of freight unless the shipper knows that the agent has no such authority. In absence of such knowledge it is no defense to show want of authority in the agent.................. 219

**5. Contract for Cars.**
  An action upon an express contract by a railway to furnish cars to a shipper for transporting his stock is not defeated by showing that at the time there

was such a pressure of business upon the road as to render it impossible for the railway to furnish the cars .................... .................... 220

6. **Immaterial Error.**
Incompetent and irrelevant testimony is not ground for reversal unless it appear that injury resulted from its admission. See example ........ .... 220

7. **Damage to Stock.**
Impaired value of live stock caused by breach of a contract may be recovered whether said stock are designed for market or for other purposes......... 221

8. **Delay in Shipment of Live Stock.**
It appearing that the live stock contracted to be shipped was to be kept in pasture at destination, the shipper would be entitled, as damage for delay, to the additional cost of herding and pasturage at place of delay above that at destination. It was error to give as damage the entire cost of herding and pasturage at the point of the delay ................................ 221

ERROR to Court of Civil Appeals for Third District, in an appeal from Runnels County.

*J. W. Terry*, for plaintiff in error.—1. It is competent for a carrier of live stock to stipulate that any suit for damages shall be instituted within forty days next after the same shall have occurred. Railway v. Trawick, 80 Texas, 270; Sherwood, Thompson & Co. v. Railway, 84 Texas, 125.

2. There being no conclusive presumption of law that a local station agent of a railway company has authority to contract for the shipment of cattle or the furnishing of cars for the shipment of cattle to a point beyond the line of railroad of his company, the defendant had the right to show that such agent in fact did not have such authority, and that it had so notified the public.

On motion for rehearing, counsel argued: We have made a very diligent search of the authorities and will now present to the court all that we have found, or that we have seen referred to, in regard to the authority of a local agent.

In Deering v. Railway, 48 New Hampshire, 472, the contract declared on and proven was not to furnish cars for the shipment of freight to a point beyond the line, but to a terminus of the line, and in fact it was expected that the further shipment beyond such terminus would be by boat. The trial court submitted the question of local agent's authority to the jury. On appeal the court said:

"The instructions in respect to the authority of Cummings were sufficiently favorable to defendant. He was the station agent at the Northumberland depot, and he testified, that he had full charge of receiving and forwarding freight at that station; and although he also testified that his duties in regard to freight were to receive, weigh, bill, and get it off as soon as possible, and that he had no authority to make contracts, and no authority over the locomotive power of the road, and

that he never agreed to send any freight, except live stock, at any particular time, we think the jury might legally find that defendants held him out as their agent, authorized to contract for sending freight the next day.

"This was the substance of the instructions on this point, and we think there was no error. If, for the convenience of the corporations, Cummings was voluntarily placed in a position of apparent authority, and so held out to the public as competent to make the contract in question, the defendants will be bound, although the agent had in fact exceeded his authority, and even if the defendants were entirely innocent of any purpose to mislead; for when one of two innocent parties is to suffer, he ought to suffer who misled the other into the contract by voluntarily placing the agent in a situation of apparent authority.

"In this case the agent was apparently clothed with the sole charge of receiving and forwarding freight at that depot, and it might well be supposed to be within the ordinary scope of his duties to make agreements as to the time of forwarding such freight. If such power was possessed by any one at that depot it must have been by him, and we think the jury were well warranted in finding as they did.

"In 2 Redfield on Railways, 113, it is laid down, that station agents who receive and forward freight have power to bind the company that the goods shall be forwarded to a point beyond the terminus of that road before a particular hour, notwithstanding a general notice published that the company would not be liable beyond their own road. And so in Wilson v. Railway, 18 Eng. Law and Eq., 557; Story on Agency, sec. 443, p. 127; Backman v. Charleston, 42 N. H., 125, 131, 144; Burnside v. Railway, 47 N. H., 554."

There was nothing in the case to call for the reference to Redfield on Railways. An examination of the text of Redfield, second edition, page 145, star page 148, in connection with note 1, will show that Judge Redfield was not expressing any opinion of his own as a commentator after mature reflection, but was simply stating the result of an English case. In the note he refers to Wilson v. Railway, 18 English Law and Equity, 557, and qualifies the expression in the text by the statement that "this was at nisi prius, before Jervis, C. J."

We have not access to this report, but, to judge from the expression of Judge Redfield, the volume referred to contains a mere abstract or note by the reporter of the case, which often is misleading as to the exact point ruled on, as no case can be critically analyzed without a full statement of the same.

Assuming, however, that this ruling was made at nisi prius, we presume that this was based on the noted case of Muschamp v. Railway, 8 Exchequer Reports, 421, where it was held, that the mere reception by a railway company of a parcel directed to a point beyond its own line was sufficient evidence of a contract to carry to such point. Such

being the rule, the placing of an agent at a local station with authority to receive packages marked to points beyond the line would be sufficient evidence of apparent authority to contract with respect to shipments beyond the line.

We believe that, with the exception of one State, the opposite of the rule in the Muschamp case is held in America; and this being so, the reason upon which the nisi prius ruling referred to was made fails here.

The case of Backman v. Charleston, 42 New Hampshire, 125, is not in point.

The case of Burnside v. Railway, 47 New Hampshire, 554, holds, that the declaration of a general freight agent having jurisdiction over all of the road concerning the whereabouts of goods is admissible in evidence. It is apparent that this ruling has no application to the present question.

In Pruitt v. Railway, 62 Missouri, 627, it was held that a local agent had authority to contract to ship live stock at a particular time from one point on the defendant's road to another.

"With regard to the third instruction, which is based on the hypothesis of a contract between the plaintiff and the station agent, it is urged here, that such agents have no power to make such contracts. The general understanding of the country undoubtedly is, that such agents are placed there for the express purpose of receiving and forwarding freight, and making such contracts in reference thereto as they are authorized by the company to make.

"The fact that in a particular instance the agent exceeds his authority by making engagements which his principal's instructions forbid, is certainly a mattter of which the public can not take notice, unless conveyed to the public in such a manner as would authorize the inference that shippers are apprised of the restrictions. It is difficult to see how the business of a railroad could be successfully conducted, in regard especially to live stock, unless the owners have a right to rely on the representations of the station agents as to the time in which to deliver their stock. It is convenient to both parties that such power should be given to agents, as stock dealers would be placed in a position which might subject them to unnecessary expense if not informed, at least within a reasonable time, of the day when it will be convenient for the railroad to transport the stock. Such engagements, like all other engagements, may be excused from literal performance, undoubtedly, if unforeseen occurrences, such as the law recognized as sufficient, should occasion slight delays. Derring v. Railway, 48 N. H., 455; 2 Redf. on Rys., 113; 18 Eng. Law and Eq., 557; Story on Agency, secs. 127, 443; 42 N. H., 126; 47 Id., 554."

In Wood v. Railway, 6 American and English Railway Cases, 314, it was held to be a question of fact for the jury whether the local

agent had authority to contract to furnish cars at a particular time, and that the trial court had erred in rejecting testimony to show want of authority.

On the second appeal of this case, reported in 21 American and English Railway Cases, 36, the ruling on the first appeal was adhered to, and it was held that there was not sufficient evidence of the agent's authority to go to the jury; but on a rehearing in the case, reported in 24 American and English Railway Cases, 91, the ruling that the case should not have gone to the jury was receded from.

In this case, while the potatoes were to be shipped beyond the defendant's line, it appears from the report of the evidence in 21 American and English Railway Cases, that the contract as claimed by plaintiff with the local agent was that the cars should be at the station on a named day. It does not clearly appear from any of the reports whether the contract relied on was merely to furnish cars for the shipment over the defendant's line, or to furnish cars to go beyond the defendant's line, and this distinction is nowhere referred to in any of the opinions.

On the second trial of the case, the trial court submitted the question of the agent's authority as one of fact to be found by the jury from all the evidence. 24 Am. and Eng. Ry. Cases, 94; 21 Id., 37. So that that case does not sustain the ruling here; and whether the contract was of either character above stated, this decision is only authority to the extent of holding that there was sufficient evidence in the particular case to authorize the jury in finding that the power to make the contract had been conferred on the agent.

Counsel cited and discussed Grover & Baker v. Railway, 70 Mo., 672; Wait v. Railway, 5 Lans., 477; Burtis v. Railway, 24 N. Y., 274; Railway v. Stultz (Kan.), 15 Am. and Eng. Ry. Cases, 97; Wood v. Railway, 59 Iowa, 196; Freedlander v. Railway, 130 U. S., 416; Elkins v. Railway, 3 Foster (N. H.), 275.

The measure of damages was not the deterioration in the value of said cattle from the time they should have been shipped in accordance with the terms of said contract until the time when they were shipped; but if the cattle were intended for immediate market on arrival at Ponca, the measure of damages is the difference in the market value of the cattle at that place at the time they should have arrived and at the time they did arrive. If the cattle, as was admitted to be the fact in this case, were not intended for sale in any reasonable time after arrival at Ponca, but were intended to be pastured there for several months, then the true measure of damages would be the additional expense, if any, of restoring the cattle as far as practicable to their former condition; and in the event that the cattle could not be fully restored to their former condition, then, in addition to such expense, the difference in the value of the cattle after they had been restored as

far as practicable to their former condition and what would have been their value had the breach of contract complained of not occurred. Railway v. Nicholson, 61 Texas, 491; Hutch. on Carr., 2 ed., 773; Railway v. Cocke, 64 Texas, 153; 2 Sedg. Meas. of Dam., 315, note a; 1 Suth. on Dam., 148, 152; Field's Law of Dam., 21.

Actual compensation is the measure of damages in all instances in which the nature of the case admits of the rule. Railway v. Guinan, 11 Tenn., 98; 27 Am. and Eng. Ry. Cases, 37.

*C. H. Willingham, C. H. Jenkins,* and *Powell & Smith,* for appellees.

1. Under a stipulation in a bill of lading that no action for breach thereof shall be sustainable unless brought within forty days after the right of action has accrued, a delay for a longer period will not bar an action for breach of a prior verbal contract to furnish cars for the shipment of stock at a certain place on a certain day. McCarty et al. v. Railway, 15 S. W. Rep., 164; Railway v. Trawick, 80 Texas, 270; Railway v. McCarty et al., 18 S. W. Rep., 716; Receivers v. Graves et al., 16 S. W. Rep., 102.

2. Where one represents a railroad company as station agent, and makes all contracts for shipments of live stock, but is not authorized to agree to provide cars at specified times, and in fact has instructions forbidding him to do so, a contract for this purpose is nevertheless binding upon the company as within the apparent scope of his authority, unless the shipper knows of the limitation. Receivers v. Graves et al., 16 S. W. Rep., 102; McCarty et al. v. Railway, 79 Texas, 37; Easton v. Dudley, 14 S. W. Rep., 583; Hutch. on Carr., secs. 267–269.

3. When a railway company contracts to furnish cars for shipment of cattle on a certain date, it is liable for the damages resulting from a failure to do so, and can not avoid the liability upon the theory that it was greatly crowded with the business of carrying live stock at the time, and could not get the necessary cars, etc., as this would be no legal excuse for the breach of the contract, and testimony in support of such theory would be irrelevant, immaterial, and improper. Railway v. McCorquodale et al., 9 S. W. Rep., 80.

The rule contended for by appellant was not the true measure of damages, and under the pleadings and the evidence it would have been error to have given it, as the charge must conform to the case as made by the pleadings and evidence. Cannon v. Cannon, 66 Texas, 682; Mitchell v. Zimmerman, 4 Texas, 75; Loving v. Dixon, 56 Texas, 75; Railway v. Rider, 62 Texas, 267; Railway v. Gilmore, 62 Texas, 391; Railway v. Faber, 63 Texas, 344.

BROWN, ASSOCIATE JUSTICE.—Hume Brothers sued the Gulf, Colorado & Santa Fe Railway Company to recover damages for the breach

of a verbal contract alleged to have been made by the station agent of the railroad company at Ballinger with the plaintiffs, whereby the railroad company agreed to furnish to plaintiffs cars to ship a large number of cattle on a certain day. It is alleged that plaintiffs, in pursuance of the contract, drove the cattle to Ballinger, and on the day agreed upon were ready to ship them, but the railroad company failed to furnish the cars, and did not furnish them for a number of days thereafter, by which Hume Brothers were compelled to hold their cattle at great expense, and that the cattle were by reason of such holding greatly depreciated in value.

The railroad company filed a general denial and special pleas, which will be mentioned in the opinion in discussing the questions raised upon them.

Upon trial in the District Court judgment was rendered against the railroad company, which was affirmed by the Court of Civil Appeals, and is now before this court on writ of error upon the following objections to the judgment:

First. That the District Court erred in sustaining plaintiffs' exceptions to defendant's answer setting up the stipulation in the contract of shipment, that suit must be filed and service had of citation within forty days.

Second. That the court erred in charging the jury that the railroad company was bound by the contract to furnish cars to plaintiffs at a certain time, if it was made by the station agent of the company; and in refusing special charges asked by defendant; and also in excluding evidence which was offered by defendant to prove that the agent did not have authority to make the contract.

Third. In excluding evidence to show that the shipment of cattle at that time was so heavy that the railroad company had not sufficient cars to supply the demand, for which reason the delay occurred in furnishing cars to plaintiffs.

Fourth. Admitting evidence as to effect of the market in the Territory on the market at Ballinger.

Fifth. In the charges given on measure of damages, and in refusing to give charges upon same subject requested by the defendant.

The defendant pleaded, that for a valuable consideration there was inserted in the shipping contract a clause by which it was agreed between it and plaintiffs that, for the recovery of damages in certain cases, including the character of plaintiffs' claim, no suit should be maintained in any court unless it was instituted and service of citation had within forty days after the damages accrued. Plaintiffs excepted to this part of the answer, and the District Court sustained the exception, which is assigned as error.

Two questions arise upon this assignment:

1. Was the stipulation unlawful in whole or in part?

2. If unlawful in part only, does the unlawful part render the clause void as a whole?

It was lawful for the defendant by agreement with plaintiffs to fix a reasonable time, shorter than that allowed by law, within which suit must be filed. Railway v. Trawick, 80 Texas, 270. Forty days has been held to be reasonable under the facts of the cases in which the question arose. The reasonableness of the time fixed is generally a question of fact to be determined by the jury. The requirement that service of citation must be made within a given time rests upon a different ground. It is not a question whether or not the time agreed upon is reasonable; but is it a subject about which the parties could contract?

Upon the filing of a petition, it is the duty of the clerk to *forthwith* issue the citation, and the duty of the officer to whom it is delivered is to serve it *without delay*. Rev. Stats., arts. 1213, 1218. When the plaintiff delivers his petition to the clerk he has no further *legal* control over the action of the officers. The law secures to the plaintiff and defendant the benefit of vigilance in serving the citation. It is not an act to be performed by the plaintiff, or by any one under his direction or control.

We have found no case involving this question. The general rule, however, is settled by the authorities that an officer can not contract to receive compensation for services in addition to those prescribed by law. Neither can he bind himself to accept less than the law allows him, nor to waive the remedy for collection provided by law. Meech. Pub. Officers, secs. 374, 376, 378. This is placed upon the ground that, the compensation being prescribed by law, it is against public policy that it should be the subject of contract between the officer and litigants. The duties of public officers in issuing and serving citations are prescribed by law, and it would seem that for the same reason any contract between third parties which would involve any interference with the regular discharge of those duties, or that would impose liability for a failure of an officer to discharge them with vigilance, would be equally against public policy and void. The part of the stipulation requiring service of citation to be made within forty days was void.

When one for a legal and valuable consideration agrees to perform two acts which are severable, one of which is lawful and the other unlawful, the contract may be enforced as to that for which it was lawful to contract, and held void as to the other. But when the two things to be done are so blended that they can not be separated, one lawful and the other not, the whole contract is void. Ohio v. Board of Ed., 35 Ohio St., 519; Gelpcke v. Dubuque, 1 Wall., 221; Presburry v. Fisher, 18 Mo., 50; United States v. Bradley, 10 Pet., 343; Hynds v. Hays, 25 Ind., 31. One period of time is by this agreement designated within which two things are to be done; no part of that time can be

specified as that within which suit might be filed, and the limitation of the right of recovery avoided, without performing the other act of serving citation.   It is apparent, therefore, that these acts are so blended that they can not be separated, and the entire clause is rendered nugatory by including that which it was not lawful to embrace in the agreement.

The District Court gave to the jury the following charge, which is assigned as error:

"You are charged, that a contract made by defendant's local agent or station master to furnish a given number of cars at a specified time would be binding upon the defendant, for a breach of which it would be liable in damages, and also that the defendant would be bound by representation and promises made by its station agent to furnish such cars from time to time."

It is claimed that if the agent of the defendant at Ballinger had no authority to make the contract to furnish cars within a given time, but was in fact prohibited from so doing, the plaintiffs can not recover, although they did not know of the limitation placed upon his authority.

An act done within the scope of the apparent authority of an agent will bind the principal, although the agent may by doing that act violate his instructions, if the party with whom he deals has no notice of the limitation placed upon his power.   Merriman v. Fulton, 29 Texas, 98.   It is well settled in this State, that a station agent of a railroad company can bind it by a verbal contract to furnish cars at a given time, for the shipment of freight, unless the shipper knows that the agent has no such authority.   Easton v. Dudley, 78 Texas, 236; McCarty v. Railway, 79 Texas, 37.

There was no evidence introduced or offered which tended to charge plaintiffs with notice that the station agent was not authorized to make the contract, and the court did not err in the charge given, or in refusing the special charges asked upon that point.

Plaintiffs were not in a position to be chargeable with notice of the rules and regulations of the railroad company, nor was there any evidence to show that they, or their agent Day, had notice of any fact that would put a prudent man on inquiry as to the agent's authority. The printing of the rule upon this subject on the contracts could not be notice, for the reason that such contracts in the natural course of things would not be known to the shipper until after the contract for cars had been made.   There was no error in excluding the evidence offered to show that the agent had no authority to make the contract.

If the agent of the railroad company made a contract with plaintiffs or their agent to furnish cars at a given time to transport the cattle, then the fact that the shipment of cattle over the line of the railroad at that time was so great that it did not have cars sufficient to enable

it to furnish the cars contracted for would constitute no defense to the action for the breach of that contract, and the court did not err in excluding evidence upon that point, nor in refusing instructions presenting that defense.

The court below permitted the following question and answer to go to the jury:

"Question: What effect would the fall and summer market in the Territory have upon the market value of the cattle at Ballinger at the time they were shipped?"

"Answer: It would have a good deal to do with the market value of the cattle here. After a certain time in the spring the buyers here of cattle for shipment to the Territory to be pastured would be gone."

How the absence of buyers from Ballinger could have been foreseen by the railway company, or how it could have affected the value of plaintiffs' cattle in the spring, before the time when the summer or fall market in the Territory could possibly be known, we can not see. So far as the facts and pleadings disclose the relation of this fact to the issue then being tried, it appears to have been wholly irrelevant, and should have been excluded; but it is not apparent that defendant was injured thereby, and the case would not be reversed for that error.

On the measure of damages, the court explained to the jury the law as the judge understood it to be applicable to the facts, and continued in this language:

"From the foregoing, you will observe that the things for you to consider and find from the evidence are: first, was there a contract as alleged between the plaintiffs and the defendant; second, would plaintiffs have been ready and willing to comply with their part of said contract but for the default of defendant; third, was said contract violated by defendant; fourth, if so, did the plaintiffs, while awaiting the shipment of said cattle, do with them what was reasonable under the circumstances; fifth, if so, did they incur any expense while so doing in the hiring of hands and providing food for said cattle; sixth, if so, how much for said hands, and what was the value of the food fed the cattle, or grass consumed by them (in passing on the two preceding clauses you will keep in mind what is stated in the fourth clause, that is, was what plaintiffs did in the premises reasonable under the circumstances, and as applied particularly to the last two clauses, was the amount that they paid out for hands reasonable and necessary, was the manner of their holding said cattle reasonable, and what was the value of the grass so consumed by said cattle); seventh, what was the deterioration, if any, in the value of said cattle at Ballinger at the time of their shipment by reason of the length of time that they had been held, and the manner in which they had been held, pastured, herded, and driven."

· Plaintiff in error assigns as error the giving of this charge, claiming that the diminution in value of the cattle caused by the delay in furnishing cars is not the proper measure of damages, because the cattle were not intended for sale at the time. In cases where the cattle were to be shipped to market for immediate sale, courts have held that the decline in the market value or the decrease in value for other reasons caused by the negligence of the carrier, is a proper measure of damages; but this does not prove that the same rule does not apply in other cases. Compensation for the injury sustained is the object of the law in giving damages. There is no fixed rule, but having this fundamental principle in view, courts apply it to the particular case so as to ascertain with the greatest certainty what the injury is, and thus to make whole the damage done. If plaintiff intended to pasture his cattle, he was entitled to have the full benefit or their condition as it was when they should have been shipped, and it is not necessary that property should be upon the market for sale in order to entitle the owner to have its impaired value restored by the person causing the injury. The rule that counsel for plaintiff in error claims, would require the owner to wait until his cattle had been pastured or fed sufficiently to restore their value as it was, before he could sue, or to make the uncertain and speculative matter of future cost of feed and care with its uncertain results a rule to ascertain the amount to be paid, whereas the plaintiff was entitled to have the railroad company make them whole at once, and without delay.

The court, however, submitted to the jury the cost of hands hired and feed consumed by the cattle during the time they were delayed. In this case, when the object was to keep the cattle after getting them to the place of delivery, the presumption would be reasonable that it would be necessary to have them cared for by hands employed, and in the nature of things the cattle, whether in Texas or the Indian Territory, must eat grass or other food. So that plaintiffs must have been at some expense in these particulars during the time the delay kept the cattle in Texas longer than if the cars had been promptly furnished, and the damages in this particular would be the difference between the expense of caring for and feeding the cattle during the time that they were kept at Ballinger on account of the delay in furnishing cars and the amount it would have cost to provide hands and food for the same time at the place of destination.

It was error to charge the jury to find for plaintiffs the entire cost of hands employed and feed furnished while delayed at Ballinger, for which error the judgments of the District Court and the Court of Civil Appeals are reversed, and the cause is remanded to the District Court for further trial in accordance with this opinion.

*Reversed and remanded.*

Delivered June 14, 1894.

*C. H. Jenkins, C. H. Willingham,* and *West & Cochran,* for defendants in error, filed a motion for rehearing.

*J. W. Terry,* for plaintiff in error, also urged a motion for rehearing, complaining of the matters in the decision adverse to appellant.

Both motions were overruled at the next term of the Supreme Court.