Thompson, Receiver, Respondent, vs. Gross and others, imp., Appellants.

*February 5 — February 27, 1900.*

*Banks and banking: Insolvency: Reorganization: Agreement of stockholders: Consideration: Discharge of stockholders' statutory liability: Parties: Receivers.*

1. An insolvent bank was reorganized, certain of the stockholders executing and delivering to it an agreement to give to it their several notes to the amount of their respective holdings of stock, "to be used and collected only in case there is a shortage in present assets and cash to cover liabilities to creditors and for stock." Such agreement further provided that any payment on a note so given should amount to a discharge *pro tanto* of the payor's statutory liability as a stockholder. The bank resumed business and continued until it again became insolvent. *Held*, that the agreement did not, as regards creditors, take the place of the statutory

Thompson vs. Gross and others.

liability of the stockholders, and that an action to enforce the agreement according to its terms was properly brought by the receiver of the bank.

2. The fact that the creditors of the bank were not parties to the agreement did not render it invalid on the ground of a failure of the consideration that payment should discharge statutory liability.

3. Payments made under the agreement would constitute a trust fund to be so administered that the statutory liability of those signing the agreement would *pro tanto* be discharged; and the creditor beneficiaries could not participate in such fund except by releasing, *pro tanto,* their rights against the stockholders under the statute.

4. The reorganization of the insolvent bank, which was in the hands of a receiver, and its resumption of business on a plan which discharged, at the outset, a large part of the claims that were enforceable against the stockholders under the statute and released the bank assets from the trust for creditors and returned them to the control of the corporation, and the mutual promises of the stockholders who executed the agreement above mentioned in order to effect such result, constituted a sufficient consideration moving to said stockholders to support the agreement.

5. In an action against the stockholders who executed said agreement, for an accounting and to enforce the agreement, an allegation of the complaint that there is a deficiency of assets of the bank existing at the date of the agreement to discharge the liabilities therein mentioned, and that an accounting is necessary to determine the exact amount, sufficiently shows that the contingency mentioned in the agreement has happened, so that the action cannot be held, on demurrer, to have been prematurely brought.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

Action by the receiver of the Commercial Bank of Milwaukee, Wisconsin, to enforce the agreement mentioned in the complaint. Such complaint is to the following effect:

In 1894, the affairs of the Commercial Bank were, because of its insolvency, in part in the hands of a receiver in winding-up proceedings, and part in the hands of an assignee for the benefit of creditors. The statutory liability of the stockholders was wholly unsatisfied, and was, in whole or in part, required to satisfy the claims of creditors. All of the de-

fendants were stockholders, except Wyman K. Flint, administrator of John G. Flint who was a stockholder; and they
held a majority of the stock, their respective holdings being
as set forth in the complaint. · In the situation mentioned,
John G. Flint and the defendants, except Wyman K. Flint,
proposed to the receiver of the corporation, and all persons
interested, a plan for the resumption of business by the bank,
the material points of which were as follows: an increase of
the capital stock; the old stockholders to surrender their
stock for cancellation and the same to be canceled; the person's holding claims against the bank assets to take stock in
satisfaction thereof so far as they could be induced to do so;
other subscriptions to be obtained and paid for in cash, sufficient to take all the stock of the bank not otherwise subscribed for.   In order to protect the stockholders in the
reorganized bank from loss on account of the old creditors,
and to equalize the deficiency of assets of the old institution
to meet old liabilities between the old stockholders participating in the reorganization, and for the purpose of inducing creditors and others to become parties to the scheme of
reorganization by subscribing for stock, and for the further
purpose of inducing the bank to resume operations according
to the plan, the defendants, except Wyman K. Flint, together with his intestate, signed and delivered to the bank
a written agreement which was in the words following:

"Milwaukee, Wis., February 21, 1894.

"We, the undersigned, stockholders of the Commercial
Bank, for and in consideration of the resumption of the said
bank, the efforts in that direction, and the mutual promises
of· one another, do hereby agree to execute and deliver to
the Commercial Bank a note for the amount set opposite
each of our names below, to be used and collected only in
case there is a shortage in present assets and cash to cover
liabilities to creditors and for stock,— each gives his note to
amount of stock, but only one hundred thousand dollars

($100,000) to be paid thereon.   It is further understood and
agreed by and between said bank and each of the under-
signed that the payment of the note executed by either of
the persons signing this agreement, or any portion thereof,
shall amount to a discharge to the amount of such payment
of his statutory liability hereinbefore described."

Relying on such agreement, cash subscriptions for stock
were obtained to the amount of $137,000 and creditors hold-
ing allowed claims took stock to the amount of $197,600;
the remaining assets in the hands of the receiver and the
assignee for the benefit of creditors were by legal authority
released; the bank resumed business; and the plan of re-
organization was fully consummated.   February 26, 1897,
the bank was duly placed in the hands of the plaintiff as
receiver in winding-up proceedings.   All the assets of the
bank, except some of doubtful value, have been converted
into money, and there is a deficiency, in the amount re-
quired to pay the debts, of more than $50,000.   The assets
mentioned in the agreement have proven insufficient to
discharge the liabilities therein mentioned, by more than
$50,000.   Defendants have severally refused to comply with
the terms of said agreement by contributing according to
their holdings of stock in the bank before reorganization,
the amount necessary to pay the last-mentioned shortage,
and have severally neglected and refused to recognize their
liability under such agreement, or to pay in any way any
part of the statutory liability mentioned therein.   An ac-
counting is necessary to determine the exact amount which
defendants should severally pay in compliance with such
agreement.

The complaint was demurred to on several grounds, in-
cluding insufficiency of facts to constitute a cause of action.
The demurrer was overruled, and demurring defendants
*Philip Gross, Ed. Aschermann, F. W Hartmann, A. L.
Story,* and *Charles I. Kane,* as administrator of the estate of
A. L. Kane, appealed.

For the appellants there were separate briefs by *W. J. Turner*, attorney for *Gross, Aschermann*, and *Hartmann; C. A. Koeffler*, attorney, and *Otto C. Baumgarten*, associate attorney, for *Story;* and *Geo. L. Williams*, attorney for *Kane;* and oral argument by *Mr. Baumgarten*.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

MARSHALL, J.   The following reasons are given in the several briefs filed by counsel for appellants, why the demurrer to the complaint should have been sustained: (1) The cause of action to enforce the statutory liability of stockholders is a personal right and cannot be prosecuted by the receiver; (2) the agreement set forth in the complaint is void for want of consideration; (3) the complaint fails to show that the contingency exists upon which the right to enforce the agreement depends.   We will briefly examine each of such reasons.

1. It is a sufficient answer to the suggestion that the statutory liability of stockholders to creditors cannot be prosecuted by the receiver, as an asset of the bank, to say that such is not the purpose of this action.   Arguments of counsel on that point are based on false premises.   The plain purpose of the pleader in drafting the complaint was to state a cause of action for an accounting as regards the deficiency of assets of the bank existing at the time of the reorganization to satisfy the liabilities mentioned in the agreement, and to enforce such agreement to the extent of such deficiency, not exceeding, however, the sum of $100,000.   The agreement is treated in the complaint as an asset of the bank for the purpose mentioned, not the statutory liability of the stockholders as such asset.   The signers of such agreement, for the considerations named in it, became conditionally debtors to the bank to the amount of $100,000, apportioned between them according to their holdings of stock

Thompson vs. Gross and others.

in the institution. It was provided that if such indebtedness by the happening of the condition precedent became absolute, the fund accumulated therefrom in the hands of the bank should be applied to the particular purposes named in the agreement. The transaction did not, as regards creditors, take the place of the statutory liability of stockholders. Its purpose was to bind its signers to make payment to the bank, to the amount and on the contingency mentioned in it, and the bank or its receiver necessarily must enforce it, if at all, in accordance with its terms.

2. The reasons advanced in support of the contention that the agreement is void for want of consideration, do not successfully bear consideration. One suggestion is that the creditors, not being parties to the transaction, were not bound, hence the purpose and consideration of the agreement failed. There was no purpose to bind the creditors, as before indicated. The transaction was a plain matter of contract between the stockholders who signed the agreement, each acting for himself, on the one side, and the bank on the other. Whether the creditors were so bound that a payment to the bank on the agreement would, of itself, to the extent thereof, discharge the statutory liability of the payor existing at the time the agreement was made, is immaterial.

But it is said the bank was incapable of making good its promise that payments made pursuant to the agreement should *pro tanto* discharge the statutory liability of the payors. A proper understanding of the contract will clear up all difficulty on that point. The agreement that payments should *pro tanto* discharge statutory liability, impressed upon the obligations of the signers a trust for the purpose named therein. The scheme, plainly, was that any fund paid in upon the agreement should constitute a trust fund in the hands of the bank to be administered by it in such a way that the statutory liability of those who signed the agree-

ment, as such liability existed at the date of it, would be *pro tanto* discharged. The transaction created an express trust, the bank being the trustee. The creditor beneficiaries under the statute could not participate in the fund accumulated under the agreement except by releasing, *pro tanto*, their rights against the stockholders under the statute.

Every element of consideration mentioned in the agreement was valuable to the signers of it. Such elements consisted of the resumption on a plan that would discharge, at the outset, a large part of the claims that were enforceable against the stockholders under the statute, and the release of the bank assets from the trusts for creditors, and return of them to the corporation where they could be more economically administered; and the mutual agreements between the signers of the instrument to effect that result. The mere statement of the matter, in connection with the fact set forth in the complaint that nearly $200,000 of the indebtedness of the bank was canceled in carrying out the plan of reorganization, shows not only that there was a good and valuable consideration for the agreement, but that it moved to the signers thereof and was a full equivalent for their obligation to contribute, in proportion to their holdings of stock, to make up the deficiency of assets necessary to satisfy the liabilities mentioned in such agreement. On the part of the bank the consideration of the obligation of the signers of the agreement has been fully executed. When their obligation shall have been discharged by payment of the amounts agreed upon to the receiver, it will be his duty to administer the fund in accordance with the terms of the agreement, that is, so that all payments by the defendants will *pro tanto* discharge statutory liability that existed against them at the date of the agreement. It does not appear that that will be attended with any serious difficulty.

3. The further contention that this action was prematurely brought, the contingency of a deficiency of assets of

the bank existing at the date of the agreement to discharge the liabilities therein mentioned not having arrived, is sufficiently answered by referring to the allegation of the complaint that there is a deficiency of such assets of over $50,000, and that an accounting is necessary to determine the exact amount. The purposes of this action are to determine that question and to enforce the agreement accordingly.

It is not considered necessary to take up the various lines of argument of counsel, or to review the numerous authorities cited. They are all addressed to the three propositions above discussed. A few very simple questions are presented for consideration, and it is supposed that what has been said covers all of them that are of sufficient significance to call for special mention. The complaint states a good cause of action to determine the amount of the deficiency which the signers of the agreement obligated themselves to provide for, not exceeding $100,000, and to enforce their obligation accordingly. Each of the persons who shall be compelled to pay upon his agreement, will be entitled to have the amount so paid used in exact accordance with the understanding therein expressed.

*By the Court.*— The order is affirmed.