**DALTON v. WAGGONER et al.**

No. 7475.

Court of Civil Appeals of Texas. Austin.

June 25, 1930.

Rehearing Denied July 11, 1930.

Dalton, Van Nort & Raish, of Dallas, for plaintiff in error.

W. D. Suiter, of Winnsboro, for defendants in error.

BLAIR, J.

This appeal is from an order sustaining a general demurrer to the petition for damages for breach of the written contract pleaded, and dismissal of the suit upon appellant's refusal to amend, and from an order overruling appellant's motion, filed later in the term, to set aside the order of dismissal and for permission to amend his petition, setting up newly discovered facts with respect to the terms of the contract in suit.

The contract was dated March 18, 1927, and by its terms appellees, all of the stockholders of the Merchants' & Planters' State Bank of Winnsboro, Tex., then in liquidation by the state banking department, employed appellant, an experienced banker, to organize a new bank, Citizens' State Bank of Winnsboro, Tex., for the purpose of taking over the assets and obligations of the bank in liquidation—appellees agreeing (a) to pay 75 per cent. of the amount assessed against their stock in the old bank "to be set apart * * * as a surplus fund in the new bank"; (b) to pay appellant a certain salary, pay for $5,000.00 in stock for him, "and also to allow (appellant) three-fourths of the net amount which may be collected during said time in actual money from the notes of said bank now charged off and approximately $30,000 to be now charged off, but with the specific understanding and agreement that one-third of said three-fourths shall be paid by him to D. E. Waggoner, of Dallas, Texas"; and (c) to obligate the new bank to "purchase all the assets * * * pay all depositors * * * and other claims against the old bank in full."

The contract provided that appellant should manage the bank until January 1, 1929, which appellant alleged that he did, voluntarily resigning at that time; that he complied with all the terms of his contract, but "that the approximately $30,000 in bad notes to be charged off were only charged off in part and the cash paid in to represent the same, and that there was, on the 31st of December, 1928, a balance due of said $30,000

to be charged off of $10,928," which appellees "by the terms of the said contract agreed, promised and bound themselves to pay into the new bank in cash"; that appellant made demand upon appellees both before and shortly after he severed his relations with the bank to pay the balance of the amount represented by the $30,000.00 charged off notes, as shown by the list of notes made by the parties at the time, but that they failed and refused to do so, which on January 3 or 4, 1929, was the direct and proximate cause of the failure of the new bank, and of its being taken over for liquidation by the state banking department, and was the direct and proximate cause of appellant losing the value of his 100 shares of stock, which would have been $110 per share, or $11,000, had appellees paid in the money as they agreed and permitted the bank to continue operation; that appellant was also damaged to the extent of an assessment by the banking department of $10,000 against him on the par value of his stock, and for damages to his reputation as a banker resulting in loss of salary in the same character of employment and in any other business, and for humiliation and loss of position and standing amongst his friends and acquaintances, and the business world generally; and that all his alleged damages aggregated $71,000.

The general demurrer was sustained on the ground that the written contract attached and made a part of the petition did not obligate appellees to pay into the new bank in cash the amount approximately $30,000 representing bad notes to be charged off under the terms of the contract.

■■ This action is shown to be erroneous when the contract is construed as a whole and in the light of the facts and circumstances attending its execution, and under the rule that every intendment must be indulged in favor of the petition stating a cause of action as against the general demurrer sustained. Necessarily the contract was executed under the advice and consent of the state banking commissioner, because he was liquidating the old bank at the time and had exclusive jurisdiction over the establishment of the new bank. Primarily the contract was one of employment of appellant, but recited the things that were to be done in carrying out the purposes of the employment. The contract bound appellees to pay into the new bank 75 per cent. of the assessment against their stock in the old bank "as a surplus fund," which under the contract must be used for that well-defined purpose. It also bound the new bank to "purchase all the assets * * * pay all depositors * * * and other claims against said old bank in full." Money for these purposes had to be provided, so the contract required appellees to charge off approximately $30,000 in bad notes and to replace that amount in cash in the new bank.

The language of the contract is not specific in this regard, but such is the only reasonable deduction that can be drawn from the whole contract and the facts attending its execution; and the petition alleges that appellees were to replace the amount of the charged-off notes "listed by the parties at the time" in cash. This construction of the contract is apparent from its provision that appellant and one of the appellees were to retain three-fourths of the proceeds of any of the charged-off notes they might thereafter collect; and, as regards the interest in such proceeds thus given to the appellee named, there was no other consideration for it except the payment of an equivalent amount in cash into the new bank, which owned these assets. This construction is also apparent from the allegation of appellant's petition that appellees had in part compliance with their contract actually paid into the new bank in cash about $20,000, which represented a part of the approximately $30,000 in bad notes to be charged off under the terms of the contract. Thus it is clearly shown that appellees have by their own acts construed the contract as requiring them to pay into the new bank in cash an amount equivalent to the amount of all bad notes which the contract obligated them to charge off. We also think that the contract, when viewed in the light of the reason and purpose of requiring appellees under the attending facts to pay in cash an amount equal to bad notes charged off, clearly bound them to do so. The new bank had no funds with which to pay depositors and other debts of the old bank. The 75 per cent. assessed against the old stock to be paid in was to be used "as a surplus fund in the new bank," and the mere act of charging off the bad notes would not supply any funds. Nor would a provision requiring the bad notes to be charged off mean anything if the new bank had funds to pay the depositors and debts of the old bank, and such stipulation would have been useless unless an attending duty devolved upon appellees to replace the amount charged off in cash. So the very nature of the transaction and the facts and circumstances attending the execution of the contract clearly show a legal charge or duty upon appellees to replace the amount of the bad notes with cash. This rule of construction has been announced in other jurisdictions under very similar contracts and facts. Merchants' Exchange Nat. Bank of N. Y. v. Commercial Warehouse Co. of N. Y., 49 N. Y. 635; Thompson v. Gross, 106 Wis. 34, 81 N. W. 1061.

■ Appellant alleged specifically the damages he sustained as the result of appellees breaching the contract as being (a) loss of the alleged value of his stock at $110 per share, or $11,000; (b) damages to the extent of the $10,000 assessment by the banking department against the par value of his stock;

668

(c) damages to his reputation as a banker, resulting in loss of salary in that business; (d) damages to his business reputation, resulting in loss of employment in any business; and (e) humiliation and loss of position and standing amongst his friends and acquaintances and the business world generally. Appellees suggest that the damages prayed for are too remote and speculative, and that the demurrer should have been sustained for that reason. The general rule is that a petition which alleges a breach of a contract carries with it at least nominal damages, and for that reason the general demurrer was erroneously sustained. We are also of the opinion that the first two items of damages claimed are the natural and probable result of the breach of the contract as alleged, and were such damages as the parties might have reasonably anticipated as the natural consequence following a breach of the contract, which is the settled rule as regards damages for breach of a contract. Brandon v. Mfg. Co. 51 Tex. 128; Gulf, C. & S. F. Ry. Co. v. Hume, 87 Tex. 221, 27 S. W. 110; Simkins on Contracts, 475–576, and cases there cited. As special damages, these first two items would also be from the nature of the terms of the contract reasonably inferred as a special loss apparent under the existing circumstances upon which they are predicated. Glasscock v. Shell, 57 Tex. 221. In fact, the issuance of $5,000 of stock to appellant, which was paid for by appellees, was a part of the consideration moving to appellant for his labor, was the basis for the contract, and it was made with reference to that special circumstance. The same is true with regard to the $5,000 of stock appellant purchased as required by the contract. Clearly the parties must have known from the very nature of the contract, or from reasonable inference therefrom, that, if they failed to pay into the new bank in cash an amount equal to the charged-off notes, and the bank became insolvent as the result of such failure, as a natural and necessary consequence appellant's stock would become worthless, and that he would be assessed the par value of his stock under the banking laws.

■ With reference to the last three items of damages claimed, we have concluded that they are not recoverable under the allegations of the petition because no special circumstances existed at the time upon which they are predicated; appellee had no knowledge of the special circumstances under which they did occur after the breach of the contract; and the contract was not based upon and made with reference to the special circumstances alleged as the predicate for such special damages. Missouri, K. & T. Ry. Co. v. Belcher, 89 Tex. 429, 35 S. W. 6; Simkins on Contracts, 477, and cases there cited.

We reverse and remand the cause, with instructions to the trial court to reinstate the cause for trial on its merits and to permit appellant to file his amended petition which he requested to file and which clearly states a cause of action against appellees as above held in this opinion.

Reversed and remanded, with instructions.