GULF, COLORADO & SANTA FE RAILWAY COMPANY v. D. B. HAYS.

Decided June 21, 1905.

**1.—Master and Servant—Selecting Incompetent Fellow Servants.**

An employer is liable to an employe for injuries resulting from a failure to exercise reasonable care in selecting coemployes, or in retaining coemploye when their incompetency is known or by the exercise of reasonable care might have been known.

**2.—Continuance—Diligence.**

On an application by a railroad company for a continuance for want of the evidence of a witness who was in its employ it was not sufficient diligence that the witness had been ordered by the company to attend the trial, no process of any kind having been issued to secure his attendance or his deposition.

**3.—New Trial—Impeaching Testimony.**

A new trial will not be granted, even in case of newly discovered evidence, to give the losing party an opportunity to attack a witness of the successful party.

**4.—Same—Surprise.**

Defendant could not have been surprised at testimony as to the bad reputation of a brakeman where plaintiff's petition alleged that his injuries were due to the brakeman's incompetency and plaintiff had asked for a continuance to obtain evidence as to the brakeman's competency and reputation.

**5.—Negligence—Definition in Charge—Personal Injury.**

A charge defining negligence in a personal injury case as being the failure to exercise ordinary care, that is, such care as an ordinary, prudent and careful person would exercise under the same or similar circumstances, while not as clear and explicit as it should have been, was sufficient in the absence of a request for a clearer and fuller definition.

**6.—Master and Servant—Brakeman—Issues.**

Where the issue was as to the incompetency of a brakeman, the question of his fitness for the various duties of a brakeman was involved, though his delinquency as to only one of such duties caused the injury in question.

**7.—Same—Negligence and Incompetency.**

Where an injury results from the negligence of a brakeman it can not be claimed that this raises no issue as to his competency, since the delinquency may be of such a flagrant character as to warrant the conclusion that only an incompetent servant would have committed it.

**8.—Same—Concurring Negligence—Collision.**

Where a brakeman neglected to flag the regular train and there was evidence that the train dispatcher neglected to notify the regular train of the presence of the work train on the main track, the charge properly submitted the issue of negligence on the part of the dispatcher as well as of the brakeman, since it may have been a concurring cause in producing the collision of the trains.

**9.—Same—Sufficiency of Rules—Jury Question.**

Where the railroad had a rule requiring the train dispatcher to notify regular trains of the presence of work trains standing on the main track, it was a question for the jury whether a provision for flagging the regular train by a brakeman on the work train was a reasonably safe and sufficient one for preventing a collision.

**10.—Same—Liability of Master—Incompetency of Servant.**

The fact that such rule as to flagging the regular train was reasonably safe did not relieve the railroad company of liability for injury resulting from a collision of the trains because of the failure through incompetency of the brakeman to flag the regular train.

**11.—Same—Concurring Negligence.**

If the collision and injury resulted in part from the concurring negligence of the train dispatcher in failing to notify the regular train, as required by the rules, of the work train being on the track, the railway company was liable, however safe the rule as to flagging trains might have been, and however competent the brakeman charged with the duty of flagging.

**12.—Evidence—Harmless Error.**

Error, if any, in permitting the fireman and brakeman on a regular train which ran into a work train to testify that their train would not have collided with the work train if notice had been given that the work train was on the track, was harmless where the engineer of the regular train also testified to the same effect.

**13.—Master and Servant—Notice of Incompetency.**

It was proper, upon an issue as to the incompetency of a brakeman and notice to the master thereof, to permit the brakeman to testify that he had been discharged by one railroad company because his services were unsatisfactory, and that he had stated that fact in his application for service in the master's employ.

**14.—Evidence—Rules—Nearness in Time.**

Where all the evidence tended to show that the same rules were in force when the accident (collision of trains) occurred that had been in force for years, it was not error to allow a former brakeman, who had not been in the defendant's service for two years prior to the accident, to testify that it was the duty of the train dispatcher to notify regular trains of the presence of work trains on the track.

**15—Same—Opinion—Safety of Rule.**

Whether the rule as to work trains flagging against moving trains was a safe one was for the determination of the jury, and the opinions of witnesses that it was a safe rule was properly excluded.

**16.—Same—Repetition Excluded.**

It is not error for the court to exclude a repetition of evidence already given by the witness testifying.

**17.—Railroads—Rules—Custom.**

Where a custom of giving a certain notification had been regularly recognized and enforced by a railway company for some time it will be regarded as the legal equivalent of a rule duly adopted and by which employes are to be governed.

**18.—Witnesses—Cross-Examination—Bias.**

A witness may be asked on cross-examination if he is in the employ of the party calling him, and if he was paid to come to court and testify.

**19.—Same—Contradiction.**

Where a witness testified that a certain brakeman had a good reputation and he had never heard of any complaint against him, it was proper for him to be asked on cross-examination if he had not heard that the brakeman had let a car go through a switch at a certain place.

**20.—Master and Servant—Incompetency—Notice to Master.**

Where the issue was as to the incompetency of a railroad employe and notice thereof to the company, evidence of his general reputation for incompetency among railroad men was admissible.

**21.—Same—Proof of Specific Acts Showing Incompetency.**

Where on such issue it was shown that the conductor under whom the employe worked was charged with the duty of reporting his acts of negligence, specific acts of negligence on the employe's part, within the knowledge of the conductor, could be shown, it being presumed that he had duly reported them to the company.

**22.—Same—Acts Unknown to Master.**

It being uncontroverted that the employe, a brakeman, did fall asleep and so neglected to flag the approaching train, the admission of evidence that the night before he had been out with the girls until a very late hour was reversible

error, there being nothing to show that knowledge of conduct of that character had been brought home to the railroad company.

Appeal from the District Court of Cooke. Tried below before Hon. D. E. Barrett.

*J. W. Terry* and *A. H. Culwell,* for appellant.—1. Before the appellee would be entitled to recover because of the incompetency of brakeman Harris, it was incumbent upon him to show that such brakeman was incompetent, and that such incompetency was known to the officials of the defendant company, or that such officials were in possession of such facts as would charge them with knowledge of his incompetency, or that said officials could have ascertained that he was incompetent to perform the duties of the position assigned him by the exercise of ordinary care, and there is no evidence in this record to show that the said brakeman was incompetent, or to show that the officials of the defendant company knew that he was incompetent, or to show that said officials could have ascertained his incompetency by the exercise of ordinary care; and there. being an entire lack of evidence to sustain these propositions on behalf of the appellee, the judgment rendered in his favor thereon is and was wholly and entirely unsupported by the evidence. Holland v. Southern Pac. Co., 34 Pac. Rep., 666; San Antonio & A. P. Ry. Co. v. Taylor, 35 S. W. Rep., 855; Gulf, C. & S. F. Ry. Co. v. Schwabbe, 21 S. W. Rep., 706; Pilkinton v. Gulf, C. & S. F. Ry. Co., 70 Texas, 226; Galveston, H. & S. A. Ry. Co. v. Davis, 48 S. W. Rep., 570; Missouri, K. & T. Ry. Co. v. Johnson, 48 S. W. Rep., 568; E. L. & R. R. Ry. Co. v. Scott, 5 S. W. Rep., 502; Houston & T. C. Ry. Co. v. Stewart, 50 S. W. Rep., 334; Merchants' Oil Co. v. Burns, 74 S. W. Rep., 760; Dallas v. Gulf, C. & S. F. Ry. Co., 61 Texas, 196; Texas & N. O. Ry. Co. v. Berry, 67 Texas, 238; Michigan Cent. Ry. Co. v. Dolan, 32 Mich., 510; Buckley & Gould v. C. S. M. Co., 14 Fed. Rep., 833; Hathaway v. Illinois Cent. Ry. Co., 60 N. W. Rep., 651; Hatt v. Nay, 10 N. E. Rep., 807; Gorman v. Missouri & St. L. Ry. Co., 43 N. W. Rep., 303; Reiser v. Penn. Co., 25 Atl. Rep., 175; Kennedy v. Spring, 35 N. E. Rep., 779; Connors v. Morton, 35 N. E. Rep., 860; Wharton on Neg., sec. 238; Bailey, Master's Liability, pp. 2, 3.

2. It is error for the court to submit as an issue ·to the jury any state of facts which are shown not to be the basis of the accident complained of, and in this case, under all of the evidence, the failure of the train dispatcher to notify the freight train of the presence of the work train was not and could not have been the proximate cause of the accident, and the court should not have submitted and authorized recovery on any alleged act of negligence which was not the proximate cause thereof. Texas & Pac. Ry. Co. v. McCoy, 90 Texas, 264; Culpepper v. International & G. N. Ry. Co., 90 Texas, 634; Gulf, C. & S. F. Ry. Co. v. Rowland, 90 Texas, 365; Southern Pac. Co. v. Wellington, 65 S. W. Rep., 219.

3. It was immaterial and irrelevant to show what the general reputation of Harris as a brakeman was, because no act of his as a brakeman, pure and simple, occasioned this accident. His reputation as a flagman

was the only thing at issue, and the proof should have been confined to his reputation as a flagman, and not as a brakeman generally. Texas M. Ry. Co. v. Whitmore, 58 Texas, 276; Michigan Cent. Ry. Co. v. Dolan, 32 Mich., 510; Illinois Cent. Ry. Co. v. Stewart, 63 S. W. Rep., 596; 1 Wood, Master & Serv., sec. 346.

4. Proof as to the incompetency of an employe must be confined to evidence of general reputation, and it is error to permit proof of specific acts of negligence in support of the allegation of incompetency, and the evidence complained of in this assignment was proof of specific conduct on behalf of brakeman Harris, and not proof of general reputation, and was, therefore, erroneous and detrimental to appellant's case herein. Galveston, H. & S. A. Ry. Co. v. Davis, 23 S. W. Rep., 301; Galveston, H. & S. A. Ry. Co. v. Davis, 48 S. W. Rep., 570; Missouri, K. & T. Ry. Co. v. Johnson, 48 S. W. Rep., 568; E. L. & R. R. Ry. Co. v. Scott, 5 S. W. Rep., 502; Holland v. Southern Pac. Co., 34 Pac. Rep., 666; B. E. Co. v. Neal, 5 Atl. Rep., 338; Connors v. Morton, 35 N. E. Rep., 860; 2 Thomp. Neg., 1054.

*Stuart & Bell,* for appellee.—1. There is ample evidence in the record to the effect that E. G. Harris was an incompetent brakeman, and that the appellant knew of it, or could have known of it, by the use of ordinary care. Texas & P. Ry. Co. v. Johnson, 35 S. W. Rep., 1044, 89 Texas, 519; Railway v. Jackson, 62 S. W. Rep., 91; Gulf, C. & S. F. Ry. Co. v. Pierce, 27 S. W. Rep., 60; Gulf, C. & S. F. Ry. Co. v. Pierce, 25 S. W. Rep., 1052; Galveston, H. & S. A. Ry. Co. v. Sherwood, 67 S. W. Rep., 779; McKinney on Fellow Servants, secs. 90, 95; Wabash Ry. Co. v. McDaniels, 107 U. S., 454; Railway v. Farmer, 73 Texas, 88; Bonner & Eddy v. Whitcomb, 80 Texas, 182.

2. Appellant had adopted two methods to prevent accidents in cases like the one at bar, that is, in cases where the work train was employed at a dangerous place, and where the incoming regular train was behind time, viz: First, the work train should send a brakeman back on the track with a flag and torpedoes a certain distance to flag the approaching train. Second, the train dispatcher should notify the incoming regular train at some telegraph station before reaching the work train of the presence of the work train. Appellee contends that it was the duty of appellant under its rules and customs in force to take both said precautions, and that it failed to do so, and that this, coupled with the notorious incompetency of E. G. Harris, constituted the two proximate causes of the accident. Railway Co. v. Stewart, 50 S. W. Rep., 333; Railway Co. v. Stewart, 48 S. W. Rep., 799; Railway Co. v. Higgins, 55 S. W. Rep., 744; Railway v. Smith, 76 Texas, 611-618; Gonzales v. City of Galveston, 84 Texas, 3-7; Railway Co. v. Mussette, 26 S. W. Rep., 1079-1080; Eames v. Railway Co., 63 Texas, 664; Jones v. George, 61 Texas, 353; Seale v. Railway Co., 65 Texas, 277, 278; Railway Co. v. Porter, 59 S. W. Rep., 922; Railway Co. v. Sweeney, 36 S. W. Rep., 800.

3. If it is shown that a servant is incompetent and his incompetency is known to the master, or could have been known, by the use of ordinary care, and that said servant's negligence proximately causes an accident

to a fellow servant, the master is liable. Railway Co. v. Farmer, 73 Texas, 88; Wabash Ry. Co. v. McDaniels, 107 U. S., 454-605; Railway v. Johnson, 35 S. W. Rep., 1042; Bonner & Eddy v. Whitcomb, 80 Texas, 182; Railway v. Jackson, 62 S. W. Rep., 91.

4. Appellant's application for continuance was not in compliance with law, and should have been overruled for the reason that it fails to state that "due diligence" was used to obtain the testimony of W. N. Glasscock, or to show that such diligence was on fact used. Rev. Stats., art. 1277; Railway Co. v. Hogan, 32 S. W. Rep., 1035; Brown v. Bank, 70 Texas, 750; Railway Co. v. Woolum, 84 Texas, 570.

5. It may be the law that the rules or customs of some other particular railway company are not admissible, but the law is well settled in Texas that evidence of the general custom among railroads is admissible. Railway Co. v. Harriett, 80 Texas, 81; Railway Co. v. Reed, 88 Texas, 449; Railway Co. v. Nelson, 49 S. W. Rep., 713.

6. Appellant having placed the witness on the stand, and having had him swear that he knew the reputation of Harris, and that Harris was a good brakeman, appellee on cross examination had a right to test the witness' knowledge, and by way of impeachment to prove by the witness that he knew of acts that would incapacitate the employe to work the next day, that is, that he did not go to bed until 4 o'clock in the morning. Said testimony was admissible by way of impeachment, and since appellant did not request the court to limit the effect of the same to the purposes of impeachment appellant can not complain. Railway v. Davis, 23 S. W. Rep., 305; Life Ins. Co. v. Baker, 31 S. W. Rep., 1073; Railway Co. v. Johnson, 72 Texas, 95; Railway Co. v. George, 66 Texas, 556; Railway Co. v. George, 85 Texas, 158; Shumard v. Johnson, 66 Texas, 72; Holloway v. State, 77 S. W. Rep., 14, 15.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by appellee for damages arising from personal injuries alleged to have occurred through the negligence of appellant in having in its employ an incompetent brakeman, who failed to flag the train that ran into the work train on which appellee was the engineer of a pile driver, which was attached to the work train, and in failing through its train dispatcher to notify the regular train of the presence of the work train on the track, on account of which negligence the regular train ran into the work train and injured appellee. Appellant answered by general demurrer and special exceptions and general denial, and specially answered that the accident occurred in the Indian Territory, where the employes connected with the work train were fellow servants of each other, and were fellow servants with the employes on the freight train that collided with the work train, and that if there was any negligence at the time of the accident it was that of a fellow servant of appellee. The cause was tried by jury and resulted in a verdict and judgment for appellee in the sum of $21,500.

Appellee was an engineer in charge of a stationary engine that was used on a flat car of appellant in connection with a pile driver, and on July 24, 1903, while the work train, of which the engine and pile driver were a part, was standing on appellant's main track between Ardmore and Marietta, Indian Territory, a regular freight train ran into the

work train, and appellant was seriously and permanently injured.  The work train was standing on a bridge across Hickory Creek.  The freight train that struck the work train was on its way north, and there was a sharp curve just south of the bridge which prevented the engineer on the freight train from seeing the work train until it was too late to prevent the collision.  The conductor of the work train had sent a brakeman to flag the freight train, but he went to sleep and did not perform the duty.  Under the laws of the Indian Territory, according to the evidence, apellee was a fellow servant with the brakeman who failed to perform his duty, as well as of the employes on the freight train.  It is a well-established rule that employers are liable to their employes for injuries resulting from a failure to exercise reasonable care in selecting their coemployes, or for retaining such coemployes when their incompetency is known, or by the exercise of reasonable care might have been known.  (Railway v. Harrington, 62 Texas, 597.)  In this case the incompetency of the brakeman was shown, not only by certain acts of negligence, but by evidence of general reputation as to unfitness and incompetency.  What has been said disposes of the first, second and third assignments of error.

The fourth and fifth assignments present error in the action of the court in overruling the application for a continuance.  The continuance was asked on account of the absence of W. N. Glasscock and A. L. Powers, the first residing at Galveston and the residence of the latter was unknown, although he had resided in Dallas and Port Arthur.  Glasscock was an employe of appellant, and no effort was made to obtain his testimony, except that he had been "ordered" to be present, but had "declined to attend" because he wanted to get married.  In the case of Powers, an agent of appellant had called at his Dallas residence, and then at his Port Arthur residence, but had not found him.  It is apparent that no diligence had been used to obtain his testimony.  The law prescribes the methods of obtaining the evidence of witnesses, and does not recognize the orders of litigants to their employes or visits to the houses of witnesses as diligence.  It is not stated that due diligence was used to obtain the testimony of Glasscock.  Before the court acted on the application for continuance, appellee agreed that the evidence of Powers set out in the application was true and could be read to the jury, and agreed that the evidence expected to be elicited from Glasscock could be read to the jury.  The testimony of the witnesses related to the competency of the brakeman who failed to flag the train.  The petition alleging the incompetency of the brakeman was filed on January 26, 1904, and the application for a continuance was made on May 4, 1904.  The court did not err in overruling the application for continuance.

In this connection it may be said that the portion of the motion for new trial on the grounds that appellant was surprised at the evidence of Fred Meyers, a witness for appellee, to the effect that the reputation of the brakeman Harris was bad, and mentioning two persons that had talked with him about said reputation, can not be sustained because appellant knew long before the trial that the question of the incompetency of the brakeman would be an important one in the case, and that his reputation would be inquired into.  It could not have been surprised

at the testimony of the witness, because it asked for a continuance to obtain testimony to meet the evidence as to the bad reputation of the brakeman. The affidavits of the witnesses attached to the motion for new trial merely show that the witnesses would contradict a witness for appellee, and new trials will not be granted, even in case of newly discovered evidence, to give the losing party an opportunity to attack a witness of the successful party.

The sixth assignment of error can not be sustained. The court did not err in defining negligence as follows: "Negligence is the failure to exercise ordinary care. And ordinary care is that degree of care which an ordinary, prudent, and careful person would exercise under the same or similar circumstances." The definition is not as clear and explicit as it should have been; but, if appellant wanted it more so, it should have asked for a clearer instruction. (Railway v. Curlin, 13 Texas Civ. App., 505, 36 S. W. Rep., 1003; Railway v. Brown, 36 Texas Civ. App., 57, 69 S. W., 1010; Railway v. Serafina, 45 S. W. Rep., 614; McDonald v. Railway, 86 Texas, 1, 22 S. W. Rep., 939, 40 Am. St. Rep., 843.

There is no merit in the seventh assignment of error, which complains of that part of the charge that submits the question of the incompetency of the brakeman to the jury. There was evidence raising that issue, and it was properly submitted. The theory advanced by appellant, that the charge was incorrect because it submitted the question of the incompetency of Harris as a brakeman, when he was not engaged in braking, but in flagging, at the time of the accident, can not be sustained. Flagging trains was one of the duties that devolved upon the brakeman, just as it might be a part of his duty to adjust switches, and his incompetency, not as to the particular branch of the duties he was engaged in at the time that he went to sleep and failed to flag the train, but his fitness for the varied duties of his employment as a brakeman, was the issue for the jury.

It was in proof that appellant had a rule requiring the dispatcher to notify the employes on a belated regular train of the presence of a work train standing on the main line, and that evidence raised an issue which the court properly submitted to the jury. The failure of the dispatcher to perform that duty may have concurred with the negligence of the brakeman in producing the disaster. (Gonzales v. City of Galveston, 84 Texas, 3, 19 S. W. Rep., 284, 31 Am. St. Rep., 17; Shippers' Compress Co. v. Davidson, 80 S. W. Rep., 1032. There is no support for the contention that the charge of the court authorized the jury to make a rule for appellant that did not exist. The rule or custom was proved, and all the court authorized the jury to do was, if the rule existed, to find whether or not it had been regarded. The court did not attempt to make a rule for appellant as to the way in which it should conduct its business, but simply allowed the jury, if they found it had been a rule, to hold it responsible for damages arising from a failure to enforce it. From the very fact that appellant made such a rule, it was inferable that, under certain circumstances, flagging was not deemed all that was required for the safety of employes, and the court did not err in submitting to the jury the question as to whether flagging alone was a reasonably safe and sufficient way in which to prevent a moving

train from running into one standing on the track. The fact that appellant had promulgated a rule did not give it such character for being safe and sufficient that it could not be questioned or inquired into. If it had been error to submit the question as to whether the rule as to flagging was a reasonably safe one, appellant could not complain because it requested a charge involving inquiry into whether the rule was reasonably safe.

The theory advanced by appellant that, if the injury resulted from the negligence of the brakeman, no question of his competency could arise is untenable. We do not think that theory can be sustained, for there is high authority for the proposition that a delinquency may be of such a flagrant and outrageous character as to warrant the conclusion that only an incompetent servant would have committed it. (Labatt, Mast. & Serv., sec. 189.) As said by the author: "The questions whether a negligent act was merely a temporary lapse by a capable servant, or indicated an essential unfitness, are entirely distinct, and it seems impossible, from a purely logical standpoint, to maintain that such evidence, so far as it bears upon the latter question, should be rejected simply because the other one is suggested by it." The charge asked by appellant, making the incompetency of the servant rest upon his incompetency as to flagging, was properly refused, because his incompetency as a brakeman was the one to be inquired into, as that was the capacity in which he was employed. Flagging was a mere incident to the employment or business of a brakeman. If Harris, the brakeman, was incompetent, the fact that the accident was caused by his negligence would not excuse appellant from liability.

The rule that appellant had in regard to flagging may have been a reasonably safe and sufficient one. Still, if an incompetent brakeman was sent out to execute the rule and the accident occurred through his negligence in failing to carry the rule into execution, appellant would be liable. In other words, safe rules are not sufficient, in the absence of competent servants to execute them, and the court did not err in refusing to instruct the jury that a safe rule would exonerate appellant from all liability. Again, if appellant had another rule as to the train dispatcher warning the late train against work trains on the track, and there was a failure to give that warning, and that failure to give that warning concurred with the carelessness of the brakeman in producing the wreck, appellant would be liable, however safe the rule may have been as to the use of flags, no matter how competent the servant may have been. This phase of the law was ignored in the special charges asked by appellant. If either of the rules had been carried into execution, appellant would have been relieved from liability, and it must follow that if neither was executed, one of them not depending for its execution on a fellow servant of appellee, appellant was liable.

It is urged that the fireman and brakeman on the freight train should not have been allowed to testify that their train would have been under such control that it would not have collided with the work train, if notice had been given to them of the presence of the latter train on the track. The objections urged to the testimony were that the witnesses did not have the management of the train, and could not testify that under certain circumstances they would have stopped the

train. We can readily conceive of emergencies arising that would justify either the fireman or brakeman in assuming sufficient control of the train to throw on the air brakes and stop it; but, if this were not true, appellant could not have been injured by the evidence of the witnesses, because the engineer, who, appellant contends, had exclusive management of the train, swore that he would have prevented the collision if he had been notified of the presence of the work train. His testimony as to what he would have done had he been notified was relevant and proper. (Telegraph Co. v. Mitchell, 91 Texas, 454, 44 S. W. Rep., 274, 40 L. R. A., 209, 66 Am. St. Rep., 906; Railway v. Davis, 84 S. W. Rep., 669.)

The witness Harris must have known whether he was examined with respect to his duties and obligations as a brakeman when he was employed by appellant, and there can be no merit in the contention that he could have been examined without his knowledge. The question was not as to whether inquiry was made as to his character and record as is assumed by appellant. It was proper to allow Harris to state that he had been discharged by one railroad company because his services were unsatisfactory, because he had stated the same thing in his application for service, and it tended to show that appellant had been put upon such notice as to his competency that inquiry would have shown his incompetency.

It was not error to allow the witness Meyer to swear that it was the duty of the train dispatcher to notify regular trains of the presence of work trains on the track. It may be true that he had not been in the employ of the appellant as brakeman for two years; but all the evidence tended to show that the same rules were in force when the accident occurred that had been in force for years, and the evidence was admissible. The question as to whether the rule as to work trains flagging against moving trains was a safe one was one to be determined by the jury, and not by the witnesses; and the court did not err in excluding evidence of the opinions of certain witnesses as to the rule being a safe one. The jury was fully as competent to pass on the safety of the rule as the witnesses. The court, however, on the direct examination, permitted the witness Meyer to state that flagging was a safe method of warning trains, and it was not error to exclude a repetition of it.

It was permissible to prove that it was the custom of appellant to notify late regular trains of the presence of work trains on the track. If the notification alluded to had become an incident of the business of appellant, and was recognized and regularly enforced by it, it will be regarded as the legal equivalent of a rule. The employes, knowing of such custom, would be governed in their actions in connection with it as in the case of a regularly adopted rule. (Labatt, Mast. & Serv., sec. 213a; Campbell v. Railway, 16 Texas Civ. App., 665; 39 S. W. Rep., 1105. The objections to the evidence as to the custom were not urged on the ground that the custom was not proper testimony, but only because such custom was not alleged in the petition, and appellant will not be allowed to shift its position in this court so as to complain of the custom of other railroads as being improper testimony regardless of the pleadings.

The evidence as to the knowledge of the train dispatcher as to where

trains were on the track was properly admitted, and such evidence was introduced without objection on the part of appellant, and the objection to the answer of appellee that the train dispatcher "is supposed to know" where trains are is without merit.

There was no issue as to whether flagging or notification of the presence of the work train was the safer plan; the sole issue being as to whether appellant had executed the rules promulgated by it. It was, therefore, immaterial which one was the safer of the two. Neither was executed; the one because an incompetent servant was sent to execute it, and the other through negligence. There was no evidence tending to show that the witnessess were experts on rules even if such testimony had been material.

The thirty-second assignment of error will not be sustained. Testimony as to whether it took an expert to flag a train was wholly irrelevant to the issues in the case, and was properly rejected.

It was not improper on the cross-examination to ask witnesses for appellant if they were not in its employ, and if they were not paid to come to court and testify. These questions were allowable to show bias upon the part of the witnesses.

The thirty-sixth and thirty-seventh assignments present as error the action of the court in admitting evidence as to the general reputation of Harris as to his competency as a brakeman. The evidence was clearly admissible. The question was as to his reputation among railroad men, and such testimony is always recognized as legitimate in inquiries as to the competency of a railroad employe. The doctrine adopted by a large number of the authorities is that, when a servant is generally reputed to be unfit for the service for which he was hired, such fact is evidence tending to show that, if the master had exercised ordinary care, the unfitness of the servant would have been discovered. (Monahan v. Worcester (Mass.), 23 N. E., 228, 15 Am. St. Rep., 226; Hatt v. Nay (Mass.), 10 N. E., 807; Western Stone Co. v. Whalen (Ill.), 38 N. E., 241, 42 Am. St. Rep., 244. The rule is thus stated in Monahan v. Worcester, above cited: "The master is bound to use reasonable care in selecting his servants; and, if a person is incompetent for the work he is employed to do, the fact that he is generally reputed in the community to want those qualities which are necessary for the proper performance of the work certainly has some tendency to show that the master would have found out that the servant was incompetent, if proper means had been taken to ascertain the qualifications of the servant." The Supreme Court of Texas goes farther than the above quotation, and says: "The difference in the effect of general reputation upon the right and duties of the railroad company and Johnson lies in this; that, it being the duty of the former to inform itself of the character of its servants, the proof of general bad reputation fixed the liability of the company, without proving knowledge of the reputation or of the character of the servant, but as to the servant Johnson the proof was simply a means by which it might be shown that he knew of the character of Roberts as a conductor." That case disposes of the contention of appellant that evidence of the reputation of the brakeman was inadmissible, unless knowledge of such reputation was brought home to appellant. As said by McKinney, in his work on Fellow Servants (section 90),

which is approved in the Johnson case: "Evidence of general reputation is admissible to prove the unfitness of a fellow servant, and ignorance of such general reputation on the part of the master is itself negligence, in a case which proper inquiry would have obtained the necessary information, and where the duty to inquire was plainly imperative." The court did not err in permitting the conductor, J. L. Thomas, who sent the brakeman out to flag the freight train, to testify on cross-examination that he had heard before the accident of the brakeman letting a car go through the switch at Dougherty. The witness had testified that the brakeman had a good reputation, and that he never had heard of any complaint against him, and it was proper to cross-examine him as to the "splitting" of the switch and throwing a car off by the brakeman about six weeks before the collision.

The thirty-ninth assignment, as to the exclusion of evidence, can not be considered because the bill of exceptions fails to show the objections urged to its admission. Igenhuett v. Hunt, 15 Texas Civ. App., 248, 39 S. W., 310.

The court did not err in permitting the engineer of the work train, Crawford, to state that he remembered about a switch being split by the brakeman Harris at Davis, and that he found him off the right of way, contrary to the rules, talking to a farmer, when he had been sent out to flag a train. This matter was brought out on cross-examination, after the witness had testified for appellant that the services of Harris had been satisfactory up to the time that the collision occurred. What has been said as to that witness applies to the evidence of other witnesses to the same facts. It was shown that it was the duty of the conductor, who was cognizant of some of the acts of negligence of the brakeman, to report the same to appellant, and the presumption is that he performed his duty. As said by this court in Railway v. Davis, 23 S. W., 301: "While the incompetency of an employe can not be proved by specific acts of carelessness, yet, where these acts have been brought to the knowledge of the master, they can be proved to establish that knowledge on the part of the master."

Appellee was permitted, over the objections of appellant, to bring out on the cross-examination of one of appellant's witnesses the fact that the night before the accident, the brakeman who fell asleep, when sent out to flag the train, had been out with girls until 4 o'clock in the morning. Appellee must have had some object in view when he insisted on that evidence being admitted. It could not have been introduced in order to show a reason for the flagman falling asleep, because that was unnecessary. It could not have been for the purpose of showing that he did fall asleep, because he admitted it. What, then, was the object in introducing the testimony? The reasons given by appellee are that the evidence was admissible to test the witness' knowledge of the reputation of the brakeman, to whose good character he had sworn, and to impeach his statement, and that it was admissible to prove recklessness and incompetency on the part of the brakeman, which was known to Thomas, a vice principal, or could have been known by the use of ordinary care. Undoubtedly the last was the true reason for the introduction of the testimony, and, if it was not admissible for that purpose, it had no place in the case. There was nothing that indicated

that Thomas knew anything about the brakeman having been out the night before with girls, and how by the exercise of ordinary care he could have obtained such knowledge does not appear. The duty did not rest upon the railroad to keep track of the actions of its employes while not on duty, and, if it had been notified of the fact that the brakeman had not gone to bed the night before earlier than he did, it would not have conveyed to it knowledge of the incompetency of the servant. If knowledge of the fact that the brakeman had lost sleep to such a degree as to make him incapable of performing his duties had been conveyed to appellant before he was sent to flag the train, it might have been negligence in the railway company to send him to perform a duty that his physical condition rendered him unable to properly perform and, if that negligence concurred with the negligence of the fellow servant in producing the injuries, appellant would be liable. As before stated, there is no evidence that tends to show that appellant knew anything whatever of the physical condition of the brakeman. We are of the opinion, therefore, that the evidence as to the brakeman having been out the night before the accident with girls, and that he did not get to his "bunk" until 4 o'clock a. m., was inadmissible. That act did not tend to show incompetency, for the most efficient servant might be guilty of the same conduct. It was an isolated act, that could have had no effect, except to prejudice the cause of appellant before the jury.

The evidence being inadmissible, the only question that remains is, did it have a prejudicial effect upon the minds of the jury? In the case of Railway v. Hume, 87 Texas, 211, 27 S. W., 110, it seems to be held that irrelevant testimony will not cause a reversal, unless it appears that injury resulted therefrom, and that may have been correct in that case; but in a case like the present, where the incompetency of a servant is sought to be shown by circumstances, it can not be said that the admission of the evidence was not injurious. The rule is thus stated, however, in Railway v. Harrington, 62 Texas, 597: "As this evidence was improperly admitted over the objection of appellant, properly interposed, and as it can not be determined that appellant was not injured thereby, the judgment ought to be reversed." That language was quoted with approval by the Supreme Court in the case of Railway v. Hannig, 91 Texas, 347, 43 S. W., 508, and the court said: "The true rule is that in such a case, in order to hold that the error does not require a reversal of the judgment, it ought clearly to appear that no injury could have resulted from the admission of the evidence." The same rule is announced in Griffis v. Payne, 92 Texas, 293, 47 S. W., 973. It does not appear in this case that the illegal evidence was harmless, and, if it had the effect on the jury which it is stated in the brief of appellee it was intended to have, it was prejudicial to the cause of appellant. Incompetency of a servant can not be proved by special acts of negligence, but such proof is allowed only when knowledge of them is brought home to the master, to show that the master knew of the acts that tended to show negligence or carelessness. If proof of negligent acts is not permitted, except when it is shown that the master was informed of them, proofs of acts not involving negligence, but which might be calculated to injure the character of a servant be-

fore the jury, should not be allowed, especially when the master knew nothing about them.

The motion for rehearing is granted, and our former opinion is withdrawn; and the judgment of the District Court will be reversed, and the cause remanded.

*Reversed and remanded.*

Application for writ of error dismissed by Supreme Court for want of jurisdiction.