**CONSOLIDATED UNDERWRITERS,**
Appellant,

v.

**Melvin L. FOSTER, Appellee.**

No. 78.

Court of Civil Appeals of Texas.

Tyler.

Oct. 29, 1964.

Rehearing Denied Nov. 19, 1964.

Royal H. Brin, Jr., Strasburger, Price, Kelton, Miller & Martin, Dallas, and William H. Kugle, Jr., Athens, for appellant.

R. H. Fields, Fields & Fields, Athens, for appellee.

DUNAGAN, Chief Justice.

This is a Workmen's Compensation case tried to a jury resulting in a judgment for Melvin L. Foster, Plaintiff in the court below and Appellee here, based on jury verdict for 401 weeks compensation at the maximum rate, with credit for 30 weeks already paid and from such judgment and the overruling of Defendant's Amended Motion for a New Trial this appeal has been perfected.

The injuries are alleged to have been sustained by Appellee on or about the 11th day of September, 1962.

Appellant, Consolidated Underwriters, by its first Point of Error, contends the trial court erred in excluding testimony tendered by it concerning the curative or beneficial effects of an operation after liability had been admitted and a tender made before the Industrial Accident Board and demand for examination had been made and acted upon.

While the Claimant's case was pending before the Industrial Accident Board, the Carrier, Consolidated Underwriters, filed with the Board its demand for a myelogram (myelograph) and surgery stating therein that (1) it admits liability; (2) it had theretofore tendered myelograph and examination to the Claimant and same was refused by Claimant; (3) that it was then making demand to the Board to require an examination of the Claimant; (4) it was tendering operation, if examination and/or myelograph reveals same could or should benefit Claimant without any reservations; (5) it accepts full liability for an operation, including all medical, and within the confines of the Texas Workmen's Compensation Act, any remaining disability to Claimant after operation is performed; and (6) in the event an operation is performed on Claimant's back, will bring the Claimant's compensation up to date and will pay for as long thereafter, within the confines of the Act, as the operating doctor feels the Claimant needs to remain off from work. The Carrier further in said demand agreed to any recognized neuro-surgeon or orthopedic selected by the Board to perform the myelogram (myelograph), however, recommending Dr. K. S. Axelsen, a neuro-surgeon of Tyler, Texas, for the consideration of the Board in making its selection.

The Board appointed Dr. Milton Freiberg of Tyler, Texas, who specializes in orthopedic surgery. Upon completion of the examination of the Claimant pursuant to the request of the Board, he made his written report to it wherein he stated he found no indications for surgery.

On the trial of this case in the District Court of Henderson County during the cross-examination of Plaintiff's witness, Dr. Sigler, the Defendant attempted to elicit testimony concerning the curative or beneficial effects of an operation on Claimant. At this stage of the proceedings, the court granted Claimant's Motion In Limine to instruct the Carrier's counsel not to mention, allude to, or in any way make reference to, directly or indirectly, either in the form of questions or statements, in the presence of a jury, anything with reference to the curative or beneficial effects that surgery might have in this case.

All the requirements as set forth in Hardware Mutual Casualty Company v. Courtney, Tex., 363 S.W.2d 427, and American General Insurance Company v. Quinn, Tex. Civ.App., 277 S.W.2d 223, concerning the admissibility of the proffered testimony were met in the instant case. However, we do not feel that those cases are controlling here for the reasons hereinafter stated.

The holdings in the following cases are not directly in point here: Texas Employers' Insurance Ass'n. v. Kubiak, (Tex. Civ.App., 1955) 276 S.W.2d 909, writ ref., n. r. e.; American General Insurance Company v. Quinn, supra; Texas Employers' Insurance Association v. Curry, (Tex.Civ. App., 1961) 347 S.W.2d 334, writ ref.; Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521; Hardware Mutual Casualty Company v. Courtney, supra. In those cases the insurance company did not admit liability, did not tender an operation, nor make a demand in writing therefor while the claims were pending before the Industrial Accident Board. Texas Employers' Ins. Ass'n. v. Ellis, (Tex.Civ.App., 1963) 365 S.W.2d 676, writ ref., n. r. e. In the case at bar, the insurer admitted liability, tendered the operation, and made a demand therefor in writing. The Board ordered a medical examination made and as a result thereof the Board was advised that an operation was not indicated. The Board denied the demand for operation and the Claimant was not put to the election to reject or refuse an operation.

Section 12b of Art. 8306, R.C.S., Hernia, reads in part:

"* * * In case the injured employé refuses to submit to the operation, the board shall immediately order a medical examination of such employé by a physician or physicians of its own selection at a time and place to be by them named, at which examination the employé and the association, or either of them, shall have the right to have his or their physician present. The physician or physicians so selected shall make to the board a written report, signed and sworn to, setting forth the facts developed at such examination and giving his or their opinion as to the advisability or non-advisability of an operation. * * *"

Section 12e of Art. 8306, R.C.S., reads in part:

"In all cases where liability for compensation exists for an injury sustained by an employé in the course of his employment and a surgical operation for such injury will effect a cure of the employé or will materially and beneficially improve his condition, the association or the employé may demand that a surgical operation be had upon the employé as herein provided, * * *. In case either of said parties demands in writing to the board such operation, the board shall immediately order a medical examination of the employé in the same manner as is provided for in the section of this law relating to hernia. If it be shown by the examination, report of facts and opinions of experts, all reduced to writing and filed with the board, that such operation is advisable and will relieve the condition of the injured employé or will materially benefit him, the board shall so state in writing and upon unanimous order of said board in writing, a copy of which shall be delivered to the employé and the association, shall direct the employé at a time and place therein stated to submit himself to an operation for said injury. If the board should find that said operation is not advisable, then the employé shall continue to be compensated for his incapacity under the general provisions of this law. If the board shall unanimously find and so state in writing that said operation is advisable, it shall make its order to that effect, stating the time and place when and where such operation is to be performed, naming the physicians therein who shall perform said operation, * * *."

Section 12e of Art. 8306, Vernon's Tex.Civ.St., speaks in terms of a demand in writing for surgery. When a demand in writing has been made, then it is the duty of the Board to order a medical examination of the Claimant. If the Board unanimously finds surgery is desirable, it may direct the Claimant to submit to an operation. Hardware Mutual Casualty Co. v. Courtney, supra.

In the instant case the Board ordered a medical examination of the Claimant which was made by a doctor of its choosing and said doctor reported to the Board that he did not find any indications for surgery, and pursuant thereto the Board denied the demand for surgery.

Several doctors had examined and treated Foster for his injuries, but none recommended surgery while the case was pending before the Board, or at any time thereafter, so far as the record reflects.

■ The question of the operation has to be decided while the case is pending before the Industrial Accident Board. Texas Employers' Ins. Ass'n v. Ellis, supra.

The statute makes it the duty of the Board to make specific findings when demand for surgery is made. The insurer complied with the steps required of it to invoke the action of the Board, but the Board did not say in writing to the Claimant: We think an operation is advisable, is not unsafe, and you are directed to submit to an operation. Since that was not done, as clearly required by the statute, the Claimant was not put to an election to have surgery or not. Thus, Foster was never called upon by the Board either to accept or to reject an operation under any of the cited provisions of Art. 8306, and consequently he never refused an operation. Garcia v. Travelers Insurance Company, (Sup.Ct., 1963) 365 S.W.2d 916.

The Appellant offered testimony of Dr. Howard Sigler on his Bill of Exception taken to the court's ruling. The testimony of Dr. Sigler offered on the Bill of Exception, in effect, was that at that time he did not know whether he (Foster) had an operatable herniated disc and did not know whether an operation for such injury would help him at all. The testimony of Dr. Sigler's that would be of any aid to the Appellant is speculative and based on probability. The Supreme Court in the case of Truck Insurance Exchange v. Seelbach, supra, said:

" * * * The benefits from surgery are to be determined not by evidence based on probabilities but rather on what has actually happened. If an operation had been performed under Board supervision the outcome of that operation with its effects on this man would be measured without resort to probabilities.

"The law compels the employee to undergo the operation if tendered and deemed advisable by the Board in order that the effect of the operation may be determined with certainty or suffer the penalties provided. It does not compel him to submit to speculation or professional opinion as to the probable outcome of an operation or suffer the penalty."

The court in Trinity Universal Insurance Company v. Wineinger, (Tex.Civ.App., 1964) 380 S.W.2d 759, writ ref., in dealing with the identical question in a Workmen's Compensation case sustained the action of the trial court in excluding such testimony,

" * * * because (a) the carrier's demand for surgery under Art. 8306, Sec. 12e, Vernon's Ann.Civ.Stat., qualfied its assumption of responsibility by a restriction to surgery to be administered by 'a physician of the carrier's choice'; and (b) the physician's medical report submitted by the carrier to the Industrial Accident Board in connection with the demand stated the doctor had examined claimant and he did 'not feel that he is a candidate for any surgical procedure.' ", citing as its authority the Courtney case.

In the case at bar, the Carrier tendered an operation conditioned upon an examination of the Claimant revealing that the same could or should benefit the Claimant's condition. The results of the medical examination ordered by the Board disclosed that no surgery was indicated. Therefore, the conditions under which the Carrier tendered the operation were shown not to exist. Moreover, the medical report submitted to

the Board by the Carrier itself revealed the inadvisability of surgery. Relevant portions of the Carrier's medical report were as follows:

"X-ray examination of the skull was within normal limits. X-ray examination of the thoracic and lumbar spine revealed a partially compressed T–12 vertebrae which was in good alignment and appeared stable and well healed.

"IMPRESSION: I find no evidence of disability at the present time. I believe the patient is fully capable of performing his usual duties."

Certainly it cannot be said the findings contained in the medical report the Carrier furnished to the Board would indicate advisability for surgery. In view of the above stated facts, this case is closely analogous to the Wineinger case and the principles stated therein are likewise applicable here.

In the case of Truck Insurance Exchange v. Seelbach, supra, the Carrier urged the contention that conceding the Kubiak and Quinn cases are correctly decided; nevertheless in the case then under consideration where no operation was suggested or recommended during the Board proceedings and the need thereof having developed later, the testimony should be admitted as an exception to the rule. The Supreme Court in an opinion written by Justice Culver rejected this theory.

We think the facts in the Seelbach case are more favorable to the Carrier than the facts in the instant case.

Doctors Sigler, Axelsen, Freiberg, Holt and Henderson, testified during the course of the trial. Doctors Freiberg, Axelsen and Holt were called by the Appellant and Doctors Sigler and Henderson were called by the Appellee.

Dr. Axelsen testified:

"* * * in my opinion he is able to work; that he is mechanically and functionally sound, and when all of this is finished and all this business we are going through now is over and done with, I think he will be able to go out and work perfectly well."

Dr. Freiberg testified:

"Q Did you find anything Doctor, that was significant to you and was suggestive even of a disc injury?

"A No, sir."

Dr. Holt, in substance, concurred with Doctors Axelsen and Freiberg. He testified that the injured vertebrae had healed, and in his opinion it had healed by December 1, 1962; he released him to return to work as of April 8, 1963.

It was the Appellant's position in the trial court that the Appellee's injuries had healed and he was capable of performing his usual work as of April 8, 1963.

■ There was no evidence before the Board that an operation would "effect a cure" or "materially and beneficially improve" Claimant's condition. In fact, the evidence disclosed that an operation was inadvisable. Accordingly, the Board did not order an operation and, of course, under such circumstances, the Claimant was not put to an election either to accept or reject the same. This being the state of the record, evidence concerning the curative or beneficial effects of surgery was inadmissible over timely objection. Trinity Universal Insurance Company v. Wineinger, supra, and Hardware Mutual Casualty Company v. Courtney, supra.

■ Further, the Bill of Exception does not show that Appellant offered testimony to the effect that an operation on the Claimant would have had a curative or beneficial effect. For all of these reasons, the point does not reflect error.

■ The Appellant in its second Point contends that the trial court erred in preventing Defendant from showing that Dr. Freiberg examined Plaintiff at the instance of the Industrial Accident Board.

During the course of the trial, the Appellee by and through his attorney of record, and before Dr. Freiberg was put on the stand by the Appellant's lawyers, as a witness for the Appellant, and outside the presence of the jury filed his Motion In Limine requesting the court to restrict Appellant and its attorney from asking any question or eliciting any answer from Dr. Freiberg to the effect that his examination of the Plaintiff was made by the order of the Industrial Accident Board. The court sustained Appellee's Motion In Limine. Appellant excepted to the court's ruling and stated to the court:

"In view of the Court's action, having sustained Counsel for Plaintiff's Motion to instruct Defendant's counsel to instruct Dr. *Frieberg* in a certain manner, Defendant moves the Court at this time to instruct counsel for the Plaintiff not to question Dr. *Frieberg* as to whether he is an insurance company doctor, in an attempt to show to the jury the doctor is an insurance company doctor, by the reason of the fact that we have been precluded by the action of the Court from showing that Dr. *Frieberg* did not examine the plaintiff at the request of the insurance company." The Court in ruling upon this Motion stated:

"That motion will be granted in part. The doctor will not be asked as to whether or not he is representing the insurance company and the rest of it will be denied. They may ask him who is paying him to come up here today and not that direct question."

The jury was retired and Appellant perfected his Bill of Exception by offering the testimony of Dr. Freiberg that it had been precluded from offering by virtue of the court's ruling.

"Q  Dr. *Frieberg*, does your file that you have with you disclose why this man came to see you in the first place?

"A  Yes, sir.

"Q  Will you please tell us the cause for his being at your office?

"A  The Industrial Accident Board asked me to see him.

"Q  The Industrial Accident Board from the State of Texas?

"A  Yes, sir, The State of Texas.

"Q  Did you receive a letter from the Industrial Accident Board?

"A  Yes, sir, I did.

"Q  What was the date of that letter?

"A  June 12, 1963.

"Q  Did the letter seek to make an appointment with you?

"A  Yes, sir, it said: 'The above named injured employee has been ordered to secure an appointment and report to you for examination.'

"Q.  Doctor, have you ever had any connection whatsoever with Melvin Foster prior to that time, sir?

"A  No, sir.

"Q  Had you at any time had any connection with Consolidated Underwriters with relationship to Melvin Foster, prior to that time?

"A  No, sir.

"Q.  Did you consider yourself as representing the Industrial Accident Board of the State of Texas in giving your opinion?

"A  Yes, sir, I did."

Appellant cites as authority sustaining its contention Texas Indemnity Ins. Co. v. Arant, Tex.Civ.App., 171 S.W.2d 915 and Employees Lloyds v. Schott, Tex.Civ.App., 183 S.W.2d 262. As we review the record concerning this point, these authorities sustain the trial court's action in excluding the proffered testimony. The court in the Arant and Schott cases sustained the trial court's action in refusing to permit a medical expert, placed upon the witness stand by the insurance carrier, to testify he had

examined Plaintiff at the instance and request of the Industrial Accident Board.

The Appellant argues that the trial court's action was error in excluding this testimony of Dr. Freiberg, particularly since Appellee's counsel was allowed to bring out that he was paid to come to court by Defendant. The trial court permitted Appellee to elicit from Dr. Freiberg on cross-examination that he was brought over to testify for Consolidated Underwriters (Appellant) and that he expected to be paid for his time by the Appellant.

It is a settled law of this state that a party who sues has a right to cross-examine an adverse witness in order to show interest, bias or prejudice to affect his credibility and a wide latitude is allowed in such matters. Traders & General Ins. Co. v. Robinson, (Tex.Civ.App., 1949) 222 S.W.2d 266, writ ref.; Gulf, C. & S. F. Ry. Co. v. Hays, 40 Tex.Civ.App. 162, 89 S.W. 29, 1905, writ dism.; Missouri, K. & T. Ry. Co. of Texas v. Smith, 31 Tex.Civ.App. 332, 72 S.W. 418, 1903, writ ref.

Having admitted into evidence testimony that has been held to be admissible, the trial court in doing so should not be required to admit into evidence testimony that has been held to be inadmissible. This point is overruled.

By Point No. 3 the Appellant complains that the court erred in refusing to allow testimony to explain the absence of Dr. Wilcox, when Defendant's counsel had been compelled in the presence of the jury panel to state the doctors Defendant intended to use, which had included Dr. Wilcox.

The trial court refused to allow W. H. Kugle, one of the attorneys representing Appellant, to testify that Dr. Wilcox told him he could not appear and testify during the course of the trial because he was in Overton to perform an emergency operation. However, the court did allow the Appellant to propound the following questions and elicit the answers thereto:

"Q All right, let's talk about your action then. Have you attempted to have him here and now?.

"A Yes.

"Q Have you been successful?

"A No, sir.

"Q Is it beyond your control?

"A Yes, sir."

We think the above testimony suffices for the purpose of establishing that Appellant was unable to have the witness present. In view of the testimony that the court did admit before the jury, we do not perceive error in the court's action. This point is without merit and is overruled.

Even if we grant that the trial court might properly have admitted the items of testimony which were excluded and complained of by Appellant's Points 2 and 3, we are unable to believe that exclusion of it was such an error as was calculated to cause, and probably did cause, the rendition of an improper judgment. Klimist v. Bearden, (Tex.Civ.App., 1964) 374 S.W.2d 783, no writ history; Texas Rules of Civil Procedure, Rule 434.

Lastly, the point is made that the court erred in denying Appellant's Motion for a Mistrial because of the conduct of Plaintiff for breaking down and crying before the jury on the witness stand.

The record reflects that while testifying, the Appellee was sitting in the witness chair with his head in his hands and crying. The court retired the jury and suggested that Appellee regain his composure and the trial would be resumed. The jury was recalled and it is not shown that this again occurred.

Under this record, no error is presented by Appellant's last point because a party's involuntary manifestation of seemingly genuine emotion by weeping, crying or similar conduct during a civil trial, is not grounds for a mistrial, reversal or new trial, in absence of a showing of extreme prejudicial effect upon the jury, and the decision of the

trial court denying a mistrial or new trial on such grounds will not be disturbed by the Appellate court in the absence of an abuse of discretion on the part of the trial judge. Lantex Construction Company v. Lejsal, (Tex.Civ.App., 1958) 315 S.W.2d 177, writ ref., n. r. e.; Western Union Telegraph Co. v. Shaw, 40 Tex.Civ.App. 277, 90 S.W. 58, 1905. The court did not abuse its discretion in refusing to grant a mistrial.

Judgment affirmed.